Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# OPINION

No. 04-07-00481-CV

**IN THE INTEREST OF J.S.P.**, A Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2004-CI-16733
Honorable Michael P. Peden, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:    December 31, 2008

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Mark Woerner appeals from the trial court's modification of the parent-child relationship. We reverse the portion of the judgment pertaining to the issue of possession and access, and remand for further clarification. In all other respects, we affirm the judgment of the trial court.

## BACKGROUND

Woerner was injured in an accident and suffered a closed-head injury. While at a rehabilitation center, he met April Pendleton ("April"), who soon became pregnant with Woerner's child. In February of 1999, J.S.P. was born. In 2002, appellee Kay Pendleton ("Pendleton"), J.S.P.'s maternal grandmother and April's legal guardian, brought a Petition in Suit Affecting the Parent-

Child Relationship. An agreed order was entered which found that "the appointment of a parent or the parents of the child . . . would not be in the best interest of the child because such appointment would significantly impair the child's physical health or emotional development." Pendleton was appointed the sole managing conservator of J.S.P., and Woerner was permitted visitation supervised by Pendleton "at times mutually agreed to in advance." No child support was ordered.

In 2004, Woerner filed a petition to modify the parent-child relationship, requesting that he be appointed a joint managing conservator with the exclusive right to designate J.S.P.'s primary residence, and that a standard possession order be instituted. On May 10, 2005, temporary orders were entered, which continued supervised visitation, but on a schedule, and allowed persons other than Pendleton to supervise. Specifically, Woerner was granted supervised visitation with J.S.P. on Wednesdays from 4:00 p.m., or at the time karate class ends, until 6:00 p.m., and on Saturdays from 10:00 a.m. until 6:00 p.m.

In 2007, the conservatorship issues were tried to a jury. Woerner was appointed joint managing conservator along with Pendleton, who retained the exclusive right to designate J.S.P.'s primary residence. The trial court then conducted a bench trial on the issues of possession and access. The trial court continued the same supervised visitation schedule, and further ordered Dr. Todd Larsen, a child psychologist, to work with Woerner to develop a transitory program leading to unsupervised periods of possession, and, at such time as Dr. Larsen determines is appropriate, standard possession. Woerner's right to attend J.S.P.'s school activities was limited regarding special education meetings; specifically, it was ordered that Woerner be allowed to attend Admission Review and Dismissal (ARD) meetings as a participant only, but not as a voting member. The trial court also ordered Woerner to pay Pendleton $250 per month in child support and to reimburse

Pendleton $186 per month for the cost of J.S.P.'s health insurance. Finally, Woerner was ordered to pay Pendleton $4,000 in attorney's fees.

The trial court made the following findings of fact, which were memorialized in the final order:

1. The child, [J.S.P.], has special needs[,] including but not limited to[,] ADHD[,] a history of explosive violent outbursts[,] and has been determined by the school district to qualify for special education due to emotional disturbance.

2. The father, Mark Woerner[,] is limited in his ability to independently make appropriate judgment decisions due to his cognitive impairment resulting from a closed head injury[.]

3. During the pendency of temporary orders through the time of trial[,] the father had exercised only supervised visitation either by Kay Pendleton, his mother[,] or Kids Exchange, a professional supervisory program.

4. During the periods of possession supervised by Kids Exchange[,] there had been eleven incidents in which it was documented that intervention by supervisory personnel was required.

5. There was limited evidence of any support system available to the father outside of a professional supervisory program to assist him with periods of possession in an unsupervised setting[.]

6. Given the father's cognitive limitations and the child's special needs[,] the Court finds that the possessory rights of the father should be limited to protect the child.

7. The Court finds that the father previously participated in the child's therapy sessions with the child's psychologist, Dr. Todd Larsen.

On appeal, Woerner claims the trial court erred in: (1) appointing Dr. Larsen to determine Woerner's future access to J.S.P.; (2) drafting an order that is not specific enough to be enforced; (3) limiting Woerner's rights regarding possession and access to J.S.P.; (4) ordering Woerner to pay child support and health insurance for J.S.P; (5) awarding Pendleton attorney's fees; and (6) admitting the testimony of Dr. Dina Trevino. We will address each issue in turn.

**PARTIAL REPORTER'S RECORD**

At the outset, we must note that this appeal is before us on a partial reporter's record. The reporter's record consists of "Jury Trial Excerpts" from March 7, 2007; a hearing held on May 14, 2007; and a hearing on Pendleton's motion to enter conducted on June 11, 2007. Noticeably missing from the record is the testimony of several key witnesses who testified during the six-day trial, including Woerner, Pendleton, Dr. Larsen, and Dr. Trevino. Pursuant to Rule 34.6(c), an appellant may present an appeal on a partial reporter's record if he includes in the request for the reporter's record a statement of the points or issues to be presented on appeal; he will then be limited on appeal to only those points or issues raised. TEX. R. APP. P. 34.6(c)(1); *Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002). A copy of the request must be filed with the trial court clerk. TEX. R. APP. P. 34.6(b)(2). When an appellant fails to file the statement of appellate points or issues, we presume that the material missing from the reporter's record is relevant and supports the trial court's judgment. *See Bennett*, 96 S.W.3d at 229 (stating that "had [appellant] completely failed to submit his statement of points or issues, Rule 34.6 would require the appellate court to affirm the trial court's judgment").

In the instant case, Woerner did not file a statement of the points or issues which he intended to present on appeal as required by Rule 34.6(c)(1). We must therefore presume the omitted portions of the record are relevant and support the trial court's judgment.

**STANDARD OF REVIEW**

In determining issues of possession and access, the primary consideration is always the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (Vernon 2002); *In re J.A.J.*, 243 S.W.3d 611, 614 (Tex. 2007). Trial courts have broad discretion to determine what is in a child's best interest.

*Villaseñor v. Villaseñor,* 911 S.W.2d 411, 419 (Tex. App.—San Antonio 1995, no writ). On appeal, we will not disturb a trial court's order modifying a conservatorship unless a clear abuse of discretion is established by the complaining party. *Echols v. Olivarez,* 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). Because conservatorship determinations are "intensely fact driven," *Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex. 2002), the trial court is in the best position to observe the witnesses and "'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *Echols,* 85 S.W.3d at 477. Accordingly, to demonstrate an abuse of discretion, the appellant must show that the trial court acted in an arbitrary or unreasonable manner, or without reference to guiding principles of law. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). We will not substitute our judgment for that of the trial court as long as some evidence of a substantive and probative character exists to support the order. *Echols,* 85 S.W.3d at 477.

## DISCUSSION

### Appointment of Child Psychologist

In his first issue, Woerner contends the trial court erred in appointing Dr. Larsen to determine his future possession of J.S.P. because a trial court cannot delegate its authority to determine access and possession rights to a third party. We begin by first noting that a trial court's ultimate goal is to minimize restrictions placed on a parent's right of possession of or access to their child. *See Allison v. Allison,* 660 S.W.2d 134, 137 (Tex. App.—San Antonio 1983, no writ). The Family Code specifically provides that orders imposing "restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." TEX. FAM. CODE ANN. § 153.193 (Vernon 2002). The modification order at issue before us, reads, in relevant part, as follows:

The terms of the following restrictions imposed on Mark Woerner's possession and access of the child are necessary to protect the best interest of the child.

IT IS ORDERED that Dr. Todd Larsen is appointed as an agent of the court to develop a transitory program designed to a [sic] schedule for unsupervised periods of possession. The parties are ORDERED to execute all documents requested by Todd Larsen including relases [sic].

IT IS ORDERED that the supervised periods of possession shall continue and Mark Woerner is ORDERED to participate in counseling sessions with Dr. Todd Larsen in developing a transitory program leading to unsupervised periods of possession.

In determining the possession schedule[,] Dr. Todd Larsen is ORDERED to consider the best interest of the child, the limitations of the parent, and a standard possession order.

At such time as Dr. Todd Larsen determines that a standard possession order is appropriate for Mark Woerner, the following possession schedule will apply.

[Standard Possession Order then set forth in detail.]

The trial court's final order also set forth numerous factual findings, including that J.S.P. has special needs, and that Woerner is "limited in his ability to independently make appropriate judgment decisions." Because of these limitations and special needs, the court further found that Woerner's possessory rights should be limited to protect the child. Certainly, based on the trial court's factual findings, the imposition of supervised visitation was a reasonable exercise of the trial court's discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). It is clear, however, that the trial court's intent was to transition Woerner to a standard possession order and thereby minimize the restrictions on Woerner's right to possession of his child in accordance with the Family Code. *See* TEX. FAM. CODE ANN. § 153.193 (Vernon 2002). We must now decide whether the trial court erred when it appointed a child psychologist to develop a plan that would allow Woerner to obtain unsupervised periods of possession and, ultimately, a standard possession order.

In support of his argument that the trial court erred in delegating its authority to Dr. Larsen, Woerner cites us to two opinions, both of which fail to support his argument. Woerner first relies on *Simpson v. Canales*, 806 S.W.2d 802 (Tex. 1991). In that toxic tort case, our supreme court held that the trial court abused its discretion by appointing a master in chancery to supervise *all* pretrial discovery pursuant to Rule 171 of the Texas Rules of Civil Procedure. *Id.* at 811-12 (emphasis in original). The holding in *Simpson* turned, not on a broad discussion of a trial court's authority to delegate tasks to a third party, but instead on whether the appointment of a master was authorized under the rule. *Id.*; Tex. R. Civ. P. 171 ("The court may, in exceptional cases, for good cause appoint a master in chancery, . . ."). The court concluded that although "more complicated than many other cases on the trial court's docket," the record failed to demonstrate that the case was "exceptional." *Simpson,* 806 S.W.2d at 811. The court further noted its reluctance, even in an exceptional case, to allow the trial court to delegate *all* discovery to a master. *Id.* at 811-12.

Woerner also relies on a family law case involving a mother's suit to modify visitation and custody rights to her estranged daughter. *See In re Levay*, 179 S.W.3d 93 (Tex. App.—San Antonio 2005, orig. proceeding). In that case, the trial court found that outside resources were necessary to facilitate visitation between mother and daughter. *Id.* at 94. The trial court then entered temporary orders admitting the child to a residential facility for an indefinite period of time "at the discretion of the [facility]," and further ordered the mother would have temporary care and custody of her daughter while she remained at the facility, but that periods of possession would be determined by the facility. *Id.* at 95. The father, who had been designated as the person with the exclusive right to determine the child's residence, filed a mandamus petition, arguing that the trial court's temporary orders effectively denied him the right to determine his daughter's primary residence. We agreed with the father's

argument and conditionally granted the writ in accordance with section 156.006 of the Family Code, which provides that while a suit for modification is pending, the trial court cannot change the designation of the person who has the exclusive right to determine the primary residence of the child unless one of three enumerated factors is present. *Id.* at 97; *see also* TEX. FAM. CODE ANN. § 156.006(b) (Vernon 2008). Our holding did not address whether a trial court may delegate to a third party some aspects of access and possession in a family law proceeding because that issue was not before us. *Levay*, 179 S.W.3d at 97.

Our own research has revealed two cases that directly address what constitutes an impermissible delegation of a trial court's authority in the family law context. The Amarillo Court of Appeals held that a trial court improperly delegated its judicial power when it ordered that a grandmother could have access to her grandson only at the sole discretion of the Department of Protective and Regulatory Services ("Department"). *See In re Webster*, 982 S.W.2d 526, 528 (Tex. App.—Amarillo 1998, no pet.). In *Webster*, the trial court terminated the parental rights of the mother and father but allowed the paternal grandmother restricted and supervised access to her grandson at the offices of the Department at the times and on the dates specifically designated by the Department. *Id.* at 527. Our sister court of appeals held that the trial court had improperly delegated its discretionary authority and reversed the trial court's order. *Id.* at 528. The Amarillo court reasoned:

> The judicial power of the State is vested in the Supreme Court, Court of Criminal Appeals, Courts of Appeals, District Courts, County Courts, Commissioners Courts, Courts of the Justices of the Peace, and such other courts as may be provided by law. TEX. CONST. art. 5, § 1 (Vernon 1993). A court's authority cannot be delegated and a trial judge may not relinquish its powers to others. *Simpson v. Canales*, 806 S.W.2d 802, 811-12 (Tex. 1991); *Tabor v. Hogan*, 955 S.W.2d 894, 897 (Tex. App.—Amarillo 1997, no pet.) (citation in footnote omitted). In other words, once the jurisdiction of a court has been lawfully invoked, its judicial power must be exercised as a nondelegable duty and cannot be assigned to another agency or tribunal. *Crum v. Randall*, 198 S.W.2d 936, 939 (Tex. Civ. App.—Dallas 1946, no writ).

*Id*.

In an unpublished opinion, the Austin Court of Appeals affirmed the trial court's decision to condition a mother's right of possession to her two children on the approval of the mother's therapist. *In re L.M.M.*, No. 03-04-00452-CV, 2005 WL 2094758, at *1 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.). At the time it entered its order, the trial court had evidence from over two dozen witnesses, including expert testimony from mental health and educational professionals, that for over ten years the parents had been involved in a highly contentious custody battle directly and adversely impacting their children. *Id.* at *3-7. Testimony demonstrated that both parents were to blame for the damage that the litigation had inflicted on their children, but the mother in particular was described as having psychological disorders along with intense and uncontrollable anger. *Id.* Based on this testimony, the trial court granted supervised visitation to the mother during specific periods thirty days after beginning a regular course of treatment with her therapist. *Id.* at *2. Additionally, the trial court provided for the possibility of increased possession if the mother met certain conditions, subject to the caveat that her therapist and the children's therapist could order that a particular period of possession not occur if the therapists mutually agreed that it would not be in the children's best interest and stated so in writing. *Id.* The mother challenged the order, arguing, in part, that it constituted an impermissible delegation of the trial court's authority to make judicial determinations. *Id.* at *10.

The Austin court disagreed, and held that while such a delegation may not always be appropriate, it was proper in this case because the decision-makers were neutral third parties—as opposed to one of the parents or conservators—appointed by the court, and the order was specific enough to be enforceable by contempt. *Id.* at *12. In reaching its decision to uphold the trial court's order, the Austin court also noted that this was not a situation where the decision-maker had absolute,

unconditional discretion over the parent's rights of possession and access. *Id.* Instead, the order was permissible because the mother was not denied access to her children; the therapists were permitted to deny her a specific period of possession only if they agreed it was in the best interest of the children. *Id.* at *11-12 (distinguishing between the terms "possession" and "access" as follows: "The right of access permits a conservator to approach, communicate, and visit with the child, whereas the right of possession allows the conservator to exercise control over the child to the exclusion of all others during a specified period.").

Turning to the issue before us, we recognize that under our Constitution, once the jurisdiction of the court has been invoked, it is the trial judge who possesses the judicial power to hear cases, decide disputed issues of fact and law, enter a judgment in accordance with the facts and the law, and enforce its judgment once entered. *Morrow v. Corbin,* 62 S.W.2d 641, 645 (Tex. 1933). "We are equally clear that the power thus confided to our trial courts must be exercised by them as a matter of nondelegable duty, that they can neither with nor without the consent of parties litigant delegate the decision of any question within their jurisdiction, once that jurisdiction has been lawfully invoked, to another agency or tribunal, . . . ." *Id.* While we cannot, and do not, condone a wholesale delegation of judicial authority over an issue of access or possession, we recognize that there are limited circumstances, as in the instant case, where delegation of some authority to a third party may be necessary to both protect the interest of the child and comply with the Family Code's mandate to minimize, when possible, the restrictions placed on a parent's right to possession of and access to his child.

Trial courts often face difficult fact situations. In *L.M.M.*, it was a long-standing and detrimental parental tug-of-war. In this case, due to Woerner's limited cognitive abilities and J.S.P.'s

special needs, the trial court was faced with the difficult task of either exercising its authority and limiting possession, or exercising its authority and attempting to expand Woerner's possession in the future. In an exercise of its judicial power, the trial court chose to incrementally expand Woerner's possession rights with the professional assistance of Dr. Larsen. Using a neutral third party,[1] such as a mental health professional, to accomplish this expansion may be necessary in a complex family law situation such as this, where the trial court is not in the best position to determine when a parent is capable of exercising unsupervised periods of possession. *See In re L.M.M.*, 2005 WL 2094758, at *12 ("While it may not be appropriate in all cases for the trial court to delegate such authority to third parties, here the decision-makers were mental health professionals appointed by the court, and the trial court maintained the power to review their decisions if challenged by the parties."). Furthermore, delegating specific issues related to possession and access appears to be permissible so long as the parent maintains access to their child, and only faces the possibility of the denial of specific periods of possession. *See In re L.M.M.*, 2005 WL 2094758, at *11. Accordingly, we decline to impose a blanket prohibition on a trial court's ability to appoint a third party to assist in deciding specific issues related to possession and access.

***Specificity of Order***

The trial court's ability to obtain assistance from a third party, however, is not limitless. The trial court must maintain the power to enforce its judgment. *Morrow*, 62 S.W.2d at 645. In order to do this, the order must be sufficiently specific so as to be enforceable by contempt. *See Ex Parte*

---

[1] Woerner argues that Dr. Larsen is not neutral, but is "biased for the Appellee, Kay Pendleton, who pays him for his opinion." Because Woerner chose to rely on a partial reporter's record, we must presume that the omitted portions of the record are relevant and support the trial court's judgment. *See* TEX. R. APP. P. 34.6(c); *Bennett*, 96 S.W.3d at 229. Absent evidence to the contrary, we must presume Dr. Larsen is a neutral therapist.

*Brister,* 801 S.W.2d 833, 834 (Tex. 1990). In Woerner's second appellate issue, he contends that the trial court's order is not specific enough to be enforced. If a trial court determines that it is in the best interest of the child to place restrictions or conditions on a conservator's rights of possession and access, then it is the court's responsibility to specifically define those terms in its decree. *In re A.P.S.*, 54 S.W.3d 493, 499 (Tex. App.—Texarkana 2001, no pet.). The judgment must state in clear and unambiguous terms what is required for the conservator to comply, and the terms must be specific enough to allow the conservator to enforce the judgment by contempt. *Id.* at 498; *Roosth v. Roosth*, 889 S.W.2d 445, 452 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

Although the order entitles Woerner to specific periods of supervised visitation, which may be enforced by contempt, we agree that the remainder of the order pertaining to possession is not specific enough to be enforceable. This court has reversed and remanded an order that conditioned any visitation upon the recommendation of "a" therapist because it did not name a therapist and did not state what was required for the conservator to comply. *See Hale v. Hale,* No. 04-05-00314-CV, 2006 WL 166518, at *3 (Tex. App.—San Antonio Jan. 25, 2006, pet. denied). Conversely, the order in *L.M.M.* was quite detailed, listing certain dates on which the mother was entitled to increased periods of possession and access. *In re L.M.M.*, 2005 WL 2094758, at *10. Here, while the order names a specific therapist and orders him to develop a transitory program leading to unsupervised visitation, no timelines are present. In particular, the current order does not state: (1) a date by which the transitory program leading to unsupervised visitation should be developed; (2) a date by which the standard possession order should begin; or (3) a deadline by which Dr. Larsen must provide the trial court with a written status report documenting the reasons why a transitory program leading to unsupervised visitation could not be developed, or a deadline for the commencement of a standard

possession order could not be given. While we understand the trial court's hesitancy to attach specific time lines, without a reporting schedule or other deadline, Woerner is unable to enforce this judgment by contempt. We therefore hold that this order does not meet the standards for enforceability. *See Hale*, 2006 WL 166518, at *3. Woerner's second issue is sustained; the portion of the order relating to possession and access is remanded to the trial court to clarify the order.

### *Limitation of Rights*

Next, Woerner argues the trial court erred in limiting his rights regarding his involvement in J.S.P.'s education. He contends the trial court's order is inappropriate because "there was no evidence presented in court that [Woerner] is unable to make educational decisions concerning this child." Woerner further states that evidence was presented at trial demonstrating that he could provide valuable insight and assistance to the school regarding J.S.P.'s needs, and then goes on to reference testimony by Pendleton, Dr. Larsen, and himself, none of which is before us. Because Woerner has chosen to proceed on a partial reporter's record, we must presume that the material missing from the reporter's record is relevant and supports the trial court's judgment. *See* TEX. R. APP. P. 34.6(c). Accordingly, we overrule Woerner's third issue.

### *Child Support*

In his fourth issue, Woerner complains the trial court erred in ordering him to pay child support and health insurance on behalf of J.S.P because Pendleton never pleaded for either, and the court's judgment must conform to the pleadings. *See* TEX. R. CIV. P. 301. He further argues the support award is improper because it is not based on evidence of his net resources, and because it does not acknowledge the amount of social security benefits J.S.P. receives as a result of Woerner's disability. *See* TEX. FAM. CODE ANN. § 154.062 (Vernon Supp. 2008); § 154.132 (Vernon 2002). Initially, the record before us reflects that Woerner waived his complaint when, at the May 14, 2007

hearing, his attorney failed to object to the imposition of child support. The trial court asked at what amount child support should be set, and Woerner's attorney answered, "$250," which is the same amount Woerner had voluntarily been paying to Pendleton prior to the complained of order; therefore, the challenge to child support is waived. *See* TEX. R. APP. P. 33.1(a).

Further, regarding health insurance, the Family Code requires the trial court to order that such be provided for the child. *See* TEX. FAM. CODE ANN. § 154.181(a) (Vernon Supp. 2008) ("[t]he court shall render an order for the medical support of the child"). Accordingly, the trial court had no discretion but to order one party or the other to provide health insurance for J.S.P., irrespective of whether Pendleton pleaded for it. As to whether sufficient evidence supports the trial court's order, because we are unable to review the full record and because Woerner did not file a statement of appellate points or issues, we must presume that sufficient evidence exists to support the order for child support and medical support. *See* TEX. R. APP. P. 34.6(c). Woerner's fourth issue is overruled.

### Attorney's Fees

Woerner next claims the trial court erred in awarding Pendleton attorney's fees for filing a frivolous lawsuit. We review the trial court's award of attorney's fees for an abuse of discretion. *Warchol v. Warchol,* 853 S.W.2d 165, 169 (Tex. App.—Beaumont 1993, no writ). Under the Family Code, attorney's fees may be awarded if the court finds that the suit for modification was filed frivolously or for purposes of harassment. TEX. FAM. CODE ANN. § 156.005 (Vernon 2002); *Warchol,* 853 S.W.2d at 169-70. To support his argument, Woerner references two settlement offers—his and Pendleton's—neither of which are included in the clerk's record. Again, based on the partial record before us, we must presume the material missing from the reporter's record is relevant and supports the trial court's decision to award attorney's fees to Pendleton. *See* TEX. R. APP. P. 34.6(c).

Accordingly, we cannot conclude the trial court abused its discretion in awarding attorney's fees to Pendleton, and Woerner's fifth issue is thus overruled.

***Admission of Evidence***

Finally, Woerner maintains the trial court erred in admitting the testimony of Dr. Dina Trevino. We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1; *Owens-Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998). We must review the entire record to determine whether the admitted or excluded testimony probably resulted in the rendition of an improper judgment. *See Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex. 2000). Generally, error on questions of evidence is not reversible unless the complaining party can demonstrate that the judgment turns on the particular evidence excluded or admitted. *Able,* 35 S.W.3d at 617; *Doncaster v. Hernaiz,* 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.). Because the partial record filed by Woerner does not include Dr. Trevino's testimony, and because Woerner failed to file a statement of issues he intended to rely on pursuant to Rule 34.6(c), we cannot determine whether the trial court erred in admitting Dr. Trevino's testimony, and therefore presume that the material missing from the reporter's record is relevant and supports the trial court's judgment. *See Bennett*, 96 S.W.3d at 229. Accordingly, Woerner's sixth issue is overruled.

## CONCLUSION

The portion of the order relating to possession and access is reversed and remanded to the trial court for further clarification. The trial court is encouraged to enter a reporting schedule or other deadlines for Dr. Larsen to adhere to. In all other respects, the judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice