

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00690-CV

Cody A. **WATERS**,
Appellant

v.

Beth T. **WATERS**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-09528
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  December 13, 2017

REVERSED AND REMANDED IN PART; AFFIRMED IN PART

Cody A. Waters appeals a final decree of divorce appointing Beth T. Waters as the sole managing conservator of their children B.W. and T.W.  Cody asserts the trial court erred by: (1) refusing to rule on his motions; (2) appointing Beth as sole managing conservator; (3) allowing the children's counselor to determine whether Cody should have any possession of and access to the children; and (4) failing to act in the children's best interest.  We reverse the portion of the final decree of divorce entitled "*Possession Order*" and remand the cause to the trial court for further clarification.  We affirm the remainder of the final decree of divorce.

## BACKGROUND

Beth filed a petition for divorce on June 6, 2016, and the trial court called the case for trial on September 26, 2016. At that time, Cody was serving a fifteen year prison sentence for aggravated assault with a deadly weapon and was awaiting trial on other charges. Cody represented himself at trial pro se.[1]

Cody announced he had numerous motions pending and specifically referenced a motion for discovery filed with the court on July 20, 2016. Beth's attorney responded that Cody did not serve her with any discovery until the week before trial. The trial court ruled trial would proceed, instructing Cody the trial court's ruling could be held if issues arose "that you probably need some discovery on."

At the time of trial, B.W. and T.W. were nine years old. Beth testified she and Cody separated in December of 2013 due to a long history of abuse. In December of 2013, Cody choked Beth's son from a previous marriage. Beth also recalled an instance in which Cody threw her onto the floor, kicked her, placed a gun to her head, and threatened to kill her. B.W. and T.W., who were three years old at the time, were standing in the doorway and observed the abuse. They also were present and observed Cody choking Beth's son. When asked how many times B.W. and T.W. had witnessed family violence, Beth responded, "I can't even count. I don't know. It was — it was a lot." The following documents were then introduced into evidence: (1) a series of text messages exchanged between Cody and Beth between January of 2014 and April or May of 2014, in which Cody threatens Beth; (2) photographs Beth testified showed her closet after Cody destroyed it in a rage and a dining room chair Cody destroyed by throwing it at her; (3) a May 18, 2016 letter, which Cody wrote to Beth while he was in jail, admitting that he was abusive and

---

[1] Cody also represents himself on appeal pro se.

violent; and (4) another letter Cody wrote while in jail addressed to Beth's son in which Cody admitted "put[ting] his hands on" Beth's son.

After Cody was convicted of aggravated assault with a deadly weapon and sentenced to fifteen years, B.W. and T.W. visited with Cody at the Bexar County jail on two occasions. Beth testified she allowed the visits so the children could visualize where Cody was and that he was okay. After the first visit, T.W. cried in the shower, and both children were emotionally affected by the visit. After the second visit, both children cried for an hour and began fighting with each other. Based on their reactions, Beth testified it was not in their best interest to continue visiting with Cody at the jail.

The children were initially speaking with Cody on the telephone on a daily basis; however, the calls were reduced to twice a week because the children were having difficulty processing the situation. Beth testified the children's behavior improved when their communication with Cody decreased, and the children eventually started running and hiding from the telephone when Cody called. Beth explained the children did not understand things Cody told them or how to process what he was saying. Cody wrote the children a letter stating evil forces led to his conviction but later wrote the children a letter stating God allowed him to be convicted so he could lead the other prisoners. Beth testified Cody wrote one letter "in the first person as God and signed it, Love God." On March 23, 2016, Cody wrote T.W. a letter telling her they would "be together as a family again before you know it." Beth testified she was asking the trial court to deny Cody access to the children because it was not in their best interest.

Beth admitted she worked with Cody in allowing him access to the children after their separation and before his incarceration; however, she explained she felt like she did not have a choice. Although Beth tried to file for a protective order in 2014 to restrict Cody's access to supervised visits, she was told she did not have sufficient evidence of the abuse in the form of

photographs. Beth later explained she sought the protective order because Cody had just shot some people and she was afraid. Beth testified she would not be able to afford the cost of travel to allow the children to visit Cody after he is transferred to the penitentiary. She also cannot afford to pay for Cody to continue to have telephone calls with the children. Beth testified she has the children in counseling several times a week.

On cross-examination, Cody asked Beth why she never called the police or requested a protective order. Beth responded that she was afraid. Beth also testified she was seeking to be appointed sole managing conservator because Cody had made bad decisions that led to his incarceration. Beth admitted Cody was allowed weekly visits with the children before his incarceration; however, she testified she later witnessed him jerking the children around by their arms. She also testified Cody bit B.W. a few weeks before he went to jail. When Beth asked B.W. about the clear bite marks on her arm, B.W. said Cody bit her to discipline her for reaching across the table.

Cody testified regarding his love for the children. Cody stated he visited the children's school and had discussions with their teachers. Cody requested that he be appointed as a joint managing conservator. Certificates of classes Cody had attended while in jail were admitted into evidence, including family violence prevention classes, anger management classes, and psychoanalysis therapy.

On cross-examination, Cody testified he bit B.W. because she used bad manners in reaching over his plate at the dinner table. Cody stated he did not intend to bite her as hard as he did. With regard to putting his hands on Beth's son, Cody testified the situation was chaotic, and he was suffering from PTSD. Cody denied he was violent toward Beth. Cody admitted he was convicted of aggravated assault with a deadly weapon and was awaiting trial on other charges; however, he stated there is a good chance the other charges will be dropped.

Based on the testimony presented, the trial court signed a final decree of divorce appointing Beth as sole managing conservator and Cody as possessory conservator.[2] The decree ordered the children to continue counseling and ordered both Beth and Cody to comply with the counselor's requests. The decree ordered that any possession and access between Cody and the children would be determined by the children's counselor.

### FAILURE TO RULE ON MOTIONS

In his first issue, Cody contends the trial court erred in refusing to rule on his motions. In his brief, Cody references a motion for continuance, a motion to interview children, and a motion to enforce the pretrial standing order. Cody does not cite any legal authority to support his arguments with regard to the motion for continuance or the motion to enforce; therefore, those issues are inadequately briefed. We will, however, address the merits of Cody's arguments.

Cody first argues the trial court erred in disregarding his motion for continuance. Cody asserts the continuance was necessary because Beth failed to respond to his motions for discovery. When the case was called for trial, however, Beth's attorney stated Cody never served Beth with any discovery until the week before trial.[3] Although the clerk's record contains two motions for discovery filed by Cody in the underlying cause, the certificates of service attached to those motions establish that Cody served the motions on the Bexar County District Attorney. As Beth notes in her brief, a party has no duty to respond to discovery that is not properly served on the party. *See Ordonez v. Solorio*, 480 S.W.3d 56, 61 (Tex. App.—El Paso 2015, no pet.). In addition, we review a trial court's ruling on a motion for continuance under an abuse of discretion standard. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). In determining whether

---

[2] In announcing his ruling, the trial judge stated, "I'm not making any finding of family violence."
[3] Beth's attorney also explained the discovery was untimely requested. *See* TEX. R. CIV. P. 190.3(b)(1) (providing discovery period ends in family law cases thirty days before the date the case is set for trial).

a trial court abuses its discretion in denying a motion for continuance seeking additional time to conduct discovery, we consider the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id.* In this case, the record demonstrates Cody failed to exercise due diligence in serving his motions for discovery on the Bexar County District Attorney. Furthermore, Cody never explained to the trial court the materiality and purpose of the discovery he was seeking. Although the trial court instructed Cody he could reurge his motion if an issue arose for which he needed discovery, Cody did not reurge his motion during trial. Based on the record presented, we hold the trial court did not abuse its discretion in denying Cody's motion for continuance.

Cody next contends the trial court erred in refusing to rule on his motion to interview the children. When Cody informed the trial court about his motion during trial, however, the trial court did rule on his motion, noting the trial court normally only interviews children who are twelve years or older. Because B.W. and T.W. were only nine, the trial court decided not to interview them. Section 153.009(a) of the Texas Family Code states a trial court shall interview a child 12 years of age or older and may interview a child under 12 years of age. TEX. FAM. CODE ANN. § 153.009(a) (West 2014). Although section 153.009(a) permitted the trial court to interview B.W. and T.W., the statute did not require such an interview "and place[d] no conditions on the court's refusal to exercise that option." *See Wiegman v. Wiegman*, No. 03-05-00025-CV, 2006 WL 305272, at *2 (Tex. App.—Austin Feb. 10, 2006, no pet.) (mem. op.); *see also In re N.W.*, No. 02-12-00057-CV, 2013 WL 5302716, at *10 (Tex. App.—Fort Worth Sept. 19, 2013, no pet.) (mem. op.) (holding trial court's refusal to interview children would not require reversal unless record contained offer of proof to show what the children would have said in the interview). Therefore, because the trial court ruled on Cody's motion and exercised its statutory discretion not

to interview the children who were under 12 years of age, we hold the trial court did not abuse its discretion in denying Cody's motion.

Finally, Cody contends the trial court erred in refusing to rule on his motion to enforce the pretrial standing order. The record reflects that Cody filed this motion on September 14, 2016, which was twelve days before trial. The record does not, however, reflect that Cody set a hearing on his motion. As the movant, Cody had the burden to set a hearing on his motion, and absent such a setting, the trial court did not abuse its discretion in failing to rule on his motion. *See Enriquez v. Livingston*, 400 S.W.3d 610, 619 (Tex. App.—Austin 2013, pet. denied); *see also In re Hearn*, 137 S.W.3d 681, 685 (Tex. App.—San Antonio 2004, orig. proceeding) ("Merely filing [a motion] with the district clerk is not sufficient to impute knowledge of the pending pleading to the trial court.").

## APPOINTMENT OF BETH AS SOLE MANAGING CONSERVATOR

In his second issue, Cody contends the trial court erred in appointing Beth as sole managing conservator.

A trial court's conservatorship determination is reviewed under an abuse of discretion standard, "and may be reversed only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *see also In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.). A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *In re A.M.*, No. 04-16-00335-CV, 2017 WL 1337648, at *2 (Tex. App.—San Antonio Apr. 12, 2017, no pet.) (mem. op.); *In re M.M.M.*, 307 S.W.3d at 849.

Although there is a presumption that the appointment of the parents of a child as joint managing conservators is in the child's best interest, the presumption is rebuttable. TEX. FAM. CODE ANN. § 153.131(b) (West 2014). In addition, a court is only authorized to appoint parents

as joint managing conservators if such appointment is in the best interest of the child. *Id*. at §§ 153.002, 153.134(a). In determining whether the appointment of parents as joint managing conservators is in the best interest of the child, the court is to consider the following factors:

(1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;

(2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;

(3) whether each parent can encourage and accept a positive relationship between the child and the other parent;

(4) whether both parents participated in child rearing before the filing of the suit;

(5) the geographical proximity of the parents' residences;

(6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and

(7) any other relevant factor.

*Id*. at § 153.134(a).

In this case, the trial court heard testimony that the children emotionally struggled after visits and telephone conversations with Cody. Evidence was presented that Cody's communication confused the children, including a letter he wrote referring to himself as God and a letter stating the family would soon be reunited. Beth also testified about the children's emotional reactions, and their hiding when Cody called. In addition, the trial court heard testimony that Cody disciplined B.W. by biting her arm severely enough to leave bite marks and bruising. Although Cody and Beth had been co-parenting prior to Cody's incarceration, Beth explained that she was afraid not to cooperate with Cody based on his prior abuse. Cody's incarceration also raised geographical issues the trial court was required to consider. Having reviewed the record as

a whole, we hold the trial court did not abuse its discretion in finding that the appointment of Cody and Beth as joint managing conservators would not be in the best interest of the children. We also hold the trial court did not abuse its discretion in appointing Beth as sole managing conservator.

## VISITATION AND ACCESS

In his third issue, Cody contends the trial court abused its discretion in allowing the children's counselor to determine his possession and access.

As previously noted, the trial court appointed Cody as a possessory conservator. The section of the final divorce decree entitled "***Possession and Access***" contained the following provision entitled "*Possession Order*":

1.      *Possession Order*

Beth T. Waters shall have possession of the children at all times not specifically provided for Cody A. Waters.
IT IS ORDERED that the children the subject of this suit continue to attend counseling with Equilla Weatherton, LPC, or another licensed professional counselor, therapist, or psychologist selected by Beth T. Waters. Both parties are ORDERED to cooperate with Ms. Weatherton and comply with her requests. IT IS ORDERED that any possession and access, including visitation, telephonic communication, or written communication between Cody A. Waters and the children shall be determined by and at the direction of Ms. Weatherton or the children's current counselor, therapist, or psychologist.
Beth T. Waters is ORDERED to provide the children's counselor, therapist, or psychologist's information to Cody A. Waters, and must inform Cody A. Waters if the counselor, therapist, or psychologist changes.

"In determining issues of possession and access, the primary consideration is always the best interest of the child." *In re J.S.P.*, 278 S.W.3d 414, 418 (Tex. App.—San Antonio 2008, no pet.). "Trial courts have broad discretion to determine what is in a child's best interest," and we review a trial court's possession order under an abuse of discretion standard. *Id.*

This court has recognized trial courts generally must exercise their judicial power to decide disputed issues and not delegate the decision of questions within their jurisdiction. *Id.* at 422. However, this court has also recognized limited circumstances may require the delegation of some

authority to a neutral third party in order to both protect the best interest of a child and to minimize, when possible, the restrictions placed on a parent's right to possession of and access to his child. *Id*. "Accordingly, we decline[d] to impose a blanket prohibition on a trial court's ability to appoint a third party to assist in deciding specific issues related to possession and access;" however, we also noted "[t]he trial court's ability to obtain assistance from a third party [] is not limitless." *Id*. Concluding "[t]he trial court must maintain the power to enforce its judgment," we held the trial court's order appointing a third party to assist in deciding issues related to possession and access "must be sufficiently specific so as to be enforceable by contempt." *Id*. at 422-23. We further explained:

> If a trial court determines that it is in the best interest of the child to place restrictions or conditions on a conservator's rights of possession and access, then it is the court's responsibility to specifically define those terms in its decree. The judgment must state in clear and unambiguous terms what is required for the conservator to comply, and the terms must be specific enough to allow the conservator to enforce the judgment by contempt.

*Id*. at 423 (internal citations omitted).

In this case, the record supports the trial court's conclusion that restricting Cody's possession and access is in the children's best interest. The record also supports the trial court's decision to appoint the children's therapist to assist the court in deciding issues related to Cody's possession and access. The trial court's order, however, fails to provide any guidelines or specific terms under which Cody would be permitted to exercise his right of possession and access. *See Hale v. Hale*, No. 04-05-00314-CV, 2006 WL 166518, at *3 (Tex. App.—San Antonio Jan. 25, 2006, pet. denied) (mem. op.) (reversing order appointing father as possessory conservator with no contact until a therapist recommended visitation because it failed to provide guidelines with terms specific enough to be enforceable by contempt); *see also In re Marriage of Collier*, 419 S.W.3d 390, 399 (Tex. App.—Amarillo 2011, no pet.) (reversing order appointing father as

possessory conservator with visitation determined at the discretion of the mother because the order failed to identify what actions the father would need to undertake to obtain the right to possession of or access to the child). Accordingly, we sustain Cody's third issue and remand the cause for the trial court to clarify the possession order.

## CHILD CUSTODY EVALUATION

In his final issue, Cody contends the trial court failed to act in the best interest of the children by not interviewing the children or ordering a child custody evaluation and by allowing the children's therapist to determine his possession and access. Having previously addressed the trial court's decision not to interview the children and its possession order, we address Cody's contention that the trial court erred in not ordering a child custody evaluation.

Although a trial court is authorized to order the preparation of a child custody evaluation, the decision to order such an evaluation is discretionary. *In re Villanueva*, 292 S.W.3d 236, 241 (Tex. App.—Texarkana 2009, orig. proceeding); *In re Garza*, 981 S.W.2d 438, 442 (Tex. App.—San Antonio 1998, orig. proceeding). Cody does not provide any record citation to establish that he ever requested a child custody evaluation, and "[t]he record reveals no circumstances which would cause a prudent trial judge to believe that such would be necessary, especially without a request." *Swearingen v. Swearingen*, 578 S.W.2d 829, 831 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ dism'd); *see also McKinney v. Davis*, No. 13-06-163-CV, 2007 WL 925649, at *2 (Tex. App.—Corpus Christi Mar. 29, 2007, no pet.) (mem. op.) (holding trial court did not abuse its discretion in failing to order social study absent a request for such a study). Accordingly, we hold the trial court did not abuse its discretion in not ordering a child custody evaluation.

**CONCLUSION**

The portion of the trial court's final decree of divorce entitled "*Possession Order*" is reversed, and the cause is remanded to the trial court for clarification of the possession order.  The remainder of the final decree of divorce is affirmed.

Sandee Bryan Marion, Chief Justice