# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-19-00049-CV

**Irwin Pentland, Appellant**

**v.**

**Stacey Denise Pentland, Appellee**

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-18-000929, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Irwin Pentland (Irwin) appeals the trial court's final decree of divorce, arguing that the decree orders "excessive restrictions to [his] possessory conservator access"; "construct[s] a possessory access scheme that is unenforceable"; and allows appellee, Stacey Denise Pentland (Stacey),[1] "complete discretion to deny [him] legitimate access to his children." Irwin also contends that the trial court erred in not granting his request for a continuance and in "admitting extraneous evidence related to [his] non-final conviction." As explained below, we will affirm the divorce decree.

---

[1] For clarity, we will refer to the parties using their first names.

## BACKGROUND

Stacey filed for divorce in February 2018, two months after Irwin was convicted of capital murder for fatally shooting their elderly friend and sentenced to life without parole in the Texas Department of Criminal Justice, Institutional Division. The trial court conducted a bench trial on Stacey's petition in September 2018, at which Irwin appeared pro se, telephonically from prison. One of the parties' two children was almost four and the other five at the time of the trial. Irwin had been incarcerated since his arrest in December 2015 and had not seen the children since that time. Although Irwin had some phone conversations with the children during the first six months of his incarceration, he had not had any contact with them for at least a year and a half before trial.

The trial court signed a decree granting the divorce and appointing Stacey as sole managing conservator. The decree appointed Irwin as possessory conservator but ordered that he shall have no possession of the children or right of access to them except for "the limited right to communicate" with them from prison by sending them letters to an Austin P.O. Box that Stacey was ordered to maintain. The decree provided that Stacey "will engage a therapist for the children whom they will see at least monthly," and the "thereapist [sic] will allow communications [from Irwin] to be reviewed by the children if deemed by therapist as appropriate." Stacey was ordered to provide Irwin's communications to the children either through the therapist or—if the children "no longer need therapy according to the therapist"—directly to the children. The decree stated that the children are permitted to communicate via cards or letters with Irwin. It also required the therapist to provide "semi-annual progress notes to both parents" and Stacey to send Irwin school photos and a redacted copy of the children's report cards semi-annually. Other than such prescribed communications, Irwin was to have

2

"no contact" with Stacey or the children. Irwin was not ordered to pay child support while incarcerated.

The trial court made findings of fact and conclusions of law per Irwin's request and denied his motion for new trial. Among the trial court's findings of fact pertaining to the children were the following:

7. It is in the children's best interest for [Stacey] to be appointed Sole Managing Conservator and for [Irwin] to be appointed Possessory Conservator of the children.

10. Regarding possession and access, it is in the children's best interest to deviate from the standard possession order and restrict [Irwin]'s access to the children only to written communication through P.O. Box. [Irwin] is currently incarcerated by Texas Department of Criminal Justice, serving a life sentence. He was convicted of capital murder in a high profile case. While the criminal matter is on appeal, the current situation of [Irwin]'s conviction and incarceration makes any possession unworkable.

11. As for access, the Court finds that it is in the children's best interest that [Irwin] be allowed to correspond with the children. However, it is not in the children's best interest, given the stress, circumstances, and public nature of [Irwin]'s conviction and incarceration that the correspondence be unmonitored or that the children be required to visit [Irwin] in prison or write to [Irwin].

11. [sic] It is in the children's best interest that limits of the procedure for correspondence between [Irwin] and [Stacey] and the children be placed, and that the children[] should continue to see a therapist to help work through the relationship with and communications from [Irwin].

. . .

15. It is in the children's best interest that [Irwin]'s contact with [Stacey] or the children is limited to that described in the Final Decree.

## DISCUSSION

Irwin raises four issues on appeal. He first contends that the trial court "erred when it had good cause to grant [his] continuance but denied" his request. He argues that

3

the trial court had "clear evidence" that he was seeking, and Stacey was resisting, certain discovery, necessitating more time for the discovery process. We review the trial court's ruling on Irwin's continuance motion for abuse of discretion. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).

We conclude that the trial court did not abuse its discretion because the record conclusively establishes that Irwin did not send Stacey any timely discovery requests although the case had been pending for eight months when trial commenced.[2] *See In re J.M.I.*, No. 01-16-00829-CV, 2017 WL 1175568, at *5 (Tex. App.—Houston [1st Dist.] Mar. 30, 2017, no pet.) (mem. op.) (concluding that trial court did not abuse discretion in denying intervenors' continuance motion when they long knew about proceedings but failed to intervene until eve of trial and did not seek discovery until after first trial setting); *see also Joe*, 145 S.W.3d at 161 (listing non-exclusive factors, including whether party exercised due diligence to obtain discovery, that trial courts may consider when determining whether trial court abused discretion in denying continuance seeking additional time to conduct discovery). We overrule Irwin's first issue.

Next, Irwin contends that the trial court erroneously admitted evidence of his criminal conviction because it was on appeal at the time.[3] He specifically complains that Detective David Fuggitt should not have been permitted to testify at all under Rule of Civil Procedure 193.6 and, in any event, should not have been permitted to testify about the

---

[2] The only request that Irwin made that complied with applicable discovery rules was a set of interrogatories that he sent to Stacey seven days before trial, which was untimely. *See* Tex. R. Civ. P. 190.3(a), (b)(1)(A) (noting that in family-law cases in which court has not entered discovery-control plan, as did not occur here, discovery period ends thirty days before trial).

[3] His conviction has since been affirmed. *See Pentland v. State*, No. 14-18-00059-CR, 2020 WL 3273256 (Tex. App.—Houston [14th Dist.] June 18, 2020, pet. ref'd) (mem. op., not designated for publication).

circumstances of Irwin's conviction because the conviction was "not final," rendering the testimony inadmissible under Rule of Evidence 609(e). We reject both contentions.

While acknowledging that we review the trial court's admission of evidence for abuse of discretion, *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005), we note that Rule of Civil Procedure 193.6 precludes the trial testimony of a non-party witness who was not timely disclosed only when such information was first sought by proper and timely discovery request. *See* Tex. R. Civ. P. 193.6(a). As already discussed above, Irwin did not make any timely discovery requests, including any requests for disclosure. *See id.* R. 192.3(d) (party may obtain discovery of potential trial witnesses). As to Irwin's contention about Rule of Evidence 609(e), that rule pertains to a party's attempt to use a prior criminal conviction for witness impeachment. *See* Tex. R. Evid. 609. If the conviction is used *for that purpose*, then "[a] conviction for which an appeal is pending is not admissible." *Id.* R. 609(e). However, Stacey did not offer Detective Fuggitt's testimony about Irwin's conviction for impeachment but, rather, to establish the facts around his unavailability to have possession of the children, which the trial court acknowledged was the purpose for admitting the testimony. Accordingly, we overrule Irwin's second issue.

In his third issue, Irwin contends that the trial court abused its discretion in ordering "excessive restrictions" on his possessory-conservatorship access to the children. He complains that the trial court permitted him only limited access to the children via letters sent to Stacey's P.O. Box but denied him any visitation with them, when the evidence showed that his mother could have transported the children to visit him in prison.[4]

---

[4] In his proposed disposition of issues, Irwin requested that the children be allowed to visit him every other weekend in prison and that his mother provide transportation for the children.

When determining conservatorship, possession, and access to children, a trial court's primary consideration is always the best interest of the children. Tex. Fam. Code § 153.002; *see Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002) ("Suits affecting the parent-child relationship are intensely fact driven, which is why courts have developed best-interest tests that consider and balance numerous factors."). The trial court is given "wide latitude" in determining best interest, and its judgment will be reversed only when it appears from the record as a whole that it has abused its discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Iliff v. Iliff*, 339 S.W.3d 126, 133 (Tex. App.—Austin 2009), *aff'd* 339 S.W.3d 74 (Tex. 2011). "There is no abuse of discretion if some probative and substantive evidence supports the trial court's order." *Iliff*, 339 S.W.3d at 134. When making this determination, we consider (1) whether the district court had sufficient information upon which to exercise its discretion, and (2) whether the district court reached a reasonably permissible conclusion based on the evidence before it. *Id.*

Stacey testified that she was afraid of Irwin; did not want the children to visit him in prison; and had learned, during the murder investigation, that he had been lying to her for years—including representing that he was attending law school in San Antonio and working a paid internship at a law firm, donning a suit and leaving the home every day, when in fact he was not. She also learned that Irwin was on probation for aggravated robbery when he committed the murder, which he had never disclosed to her. She testified that he had complete control of the couple's finances during their marriage and had withdrawn over $10,000 from her IRA without her knowledge during the year of the murder.

Stacey testified that she also learned that Irwin, near the time of the murder, had picked up the deceased's grandson from day care and left the child without adult supervision for seventeen hours, for which he had been charged with child endangerment. She testified that she

6

did not want Irwin's mother, Terri Buckholtz, to bring the children to visit him in prison because she believed Buckholtz to be untrustworthy and inclined to carry out Irwin's wishes. Stacey also testified that Buckholtz had "proven in [Irwin's prior] divorce" that she was not a good candidate for even supervised visitation, was a "hoarder" who had a house that was unsafe for children, and might try to kidnap the children. Her distrust of Buckholtz was based in part on an incident she described that occurred while the murder charges were pending: when Buckholtz and Stacey were in the marital-home garage, Stacey found some ammunition, a rifle scope, and silencer parts, of which she had been unaware; Buckholtz "took that ammunition canister, stood at [the] driveway and said, 'I'm taking this and we're never going to talk about it again.'"

Stacey testified that she believed Irwin was "dangerous," that another inmate had testified at his murder trial that he was "afraid of him," that she was afraid Irwin would "send someone out from prison to find [her] and [her] children," and that Buckholtz would likely aid in such plan by housing such person. She explained that Buckholtz had also told the children, while on a phone call with them and Irwin from prison, that their "daddy was coming home soon," despite his life sentence without parole. Stacey explained that, although for about the first six to twelve months that Irwin was incarcerated she and the children had periodic phone calls with him, she later ceased allowing the children to have contact with him as she learned more about him as the murder investigation progressed.

Detective Fuggitt confirmed that Irwin had never been enrolled in law school and testified that the charges against him for child endangerment were still pending, as were charges for his six attempts to escape from jail while the murder charges were pending. He testified about Irwin's efforts to obtain life insurance on Stacey about two months before he committed the

7

murder and stated that "without a doubt" he would "be concerned" if Irwin were to have contact with minor children. He stated that Irwin had violated his probation by possessing firearms.

Buckholtz testified that she hired a lawyer to represent her during Irwin's criminal trial and, on her counsel's advice, declined to answer questions about whether she had hidden evidence. She stated that she believed Irwin was innocent and would do everything she could do "within [existing] limitations" to "get him out of prison." Although Irwin argued to the court that Buckholtz was willing to drive the children to visit him in prison every other weekend, Buckholtz did not testify on the matter. Furthermore, Buckholtz was not a party and did not intervene in the suit. Thus, the trial court could not have ordered her any visitation with the children during which time she might have elected to bring them to visit Irwin. *See In re Marriage of D.E.L. and J.J.P.*, No. 14-17-00216-CV, 2019 WL 545911, at *3 (Tex. App.— Houston [14th Dist.] Feb. 12, 2019, no pet.) (mem. op.) ("In the absence of a non-parent's intervention, the trial court has no authority to award any non-party visitation.").

On this record, we cannot conclude that the trial court abused its discretion in determining that it was not in the children's best interest to require them to visit Irwin in prison and permitting him access to them only via letters. The children had had no contact with Irwin in over a year and half and had not seen him in person in almost four years, Stacey was opposed to being charged with transporting or facilitating the children's transport to his Gatesville prison unit from the children's present Austin-area address, and evidence showed that it was not likely that Irwin would ever be able to visit the children outside prison walls and that Buckholtz was not an appropriate person to transport the children to the prison. We cannot conclude on this record that the trial court abused its discretion in denying Irwin visitation with the children because there was sufficient evidence to support its reasonable conclusion that it was not in the

8

children's best interest that they be transported to visit him in prison. *See In re T.R.D.*, No. 03-09-00150-CV, 2010 WL 2428426, at *4 (Tex. App.—Austin June 18, 2010, no pet.) (mem. op.) (concluding that trial court did not abuse discretion in denying incarcerated mother visitation with child where order allowed other forms of communication with child; evidence supported prohibition on visitation; and mother, as possessory conservator, could later seek to modify order if circumstances changed).

In his final issue, Irwin contends that the trial court erred "by constructing a possessory conservator access scheme that is unenforceable and allows [Stacey] complete discretion to deny [him] legitimate access to his children." He cites *Roosth v. Roosth*, 889 S.W.2d 445, 452 (Tex. App.—Houston [14th Dist.] 1994, writ denied), to argue that a possession and access order must be clear and unambiguous so as to be enforceable by contempt and may not allow one parent complete discretion over the other parent's possession or access to the child. *See id.* at 452; *see also In re J.S.P.*, 278 S.W.3d 414, 422–23 (Tex. App.—San Antonio 2008, no pet.) ("If a trial court determines that it is in the best interest of the child to place restrictions or conditions on a conservator's rights of possession and access, then it is the court's responsibility to specifically define those terms in its decree. The judgment must state in clear and unambiguous terms what is required for the conservator to comply, and the terms must be specific enough to allow the conservator to enforce the judgment by contempt.").

The relevant access provisions in the decree provide:

- Stacey "shall maintain" a specified P.O. Box and provide Irwin the new address should it change;

- "Irwin may only communicate with the children and mother through letters sent to the P.O. Box";

9

- Stacey "will engage a therapist for the children whom they will see at least monthly. The therapist will allow communications to be reviewed by the children if deemed by therapist as appropriate. If the children no longer need therapy according to the therapist, . . . [Stacey] is ORDERED to give communication from . . . [Irwin] to the children. . . . [Stacey] is ORDERED to provide communication from . . . [Irwin] to the children either through the therapist or directly to the children"; and

- "IT IS ORDERED that the childrens' [sic] therapist will monitor all communication from . . . [Irwin] to the children and will facilitate introducing communication from [him] to the children. The children are permitted to communicate via cards and/or letters with . . . [Irwin]."

Irwin argues that the decree provides no accountability for the actions it requires Stacey or the unnamed therapist to take and thus is unenforceable by contempt because Stacey can simply represent that she has been providing Irwin's letters to the therapist without any way for him to know whether the therapist has shared the letters with the children.[5] Irwin contends that the trial court "did not take seriously his parental rights," as reflected in the above provisions relating to his very limited access and inability to ascertain whether his "appropriate" communications are in fact relayed to the children.

To be enforceable by contempt, an order must set forth the terms of compliance in clear, specific, and unambiguous terms so that a person charged with obeying the order will readily know exactly what duties and obligations are imposed. *In re Matthews*, No. 02-11-00202-CV, 2011 WL 2651912, at *3 (Tex. App.—Fort Worth July 7, 2011, no pet.) (mem. op.). "The question of whether an order is enforceable by contempt depends on whether the order is definite and certain, and the focus is on the wording of the judgment itself." *Id.* If the trial court's order

---

[5] Irwin cites Stacey's testimony at a hearing on a motion to enforce he filed since the decree was rendered at which Stacey testified that she did not know whether the therapist had shared Irwin's letters with the children due to "patient-doctor privilege" and merely passed the letters through to the therapist to "let her make that judgment."

requires inferences or conclusions about which reasonable persons might differ, it is insufficient to support a judgment of contempt. *Id.* (citing *Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995) (orig. proceeding)).

We conclude that the decree provisions pertaining to Irwin's access to the children are sufficiently specific as to be enforceable by contempt. *See In re A.L.E.*, 279 S.W.3d 424, 432–34 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that order requiring mother to submit to and pass drug tests at specific facility and intervals and provide such results to father prior to scheduled unsupervised possession periods, and providing for only supervised visitation by specific entity upon her testing positive for drugs, was sufficiently specific to be enforceable by contempt); *In re L.M.M.*, No. 03-04-00452-CV, 2005 WL 2094758, at *12 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.) (holding that order permitting particular court-appointed therapists to deny mother specific possession periods if therapists agreed it was in children's best interest was sufficiently specific to be enforceable by contempt). Unlike the provisions held by other courts to be insufficiently specific, the challenged provisions here leave no room for Stacey to exercise any discretion and specifically identify what each party must do: Irwin must send any correspondence to the children to the P.O. Box that Stacey must maintain, and Stacey must provide the correspondence either (a) to the children's therapist (if they are still seeing one) who is to share it with the children, as appropriate, or (b) directly to the children (if the therapist has determined that the children no longer need therapy). *Cf., e.g.*, *Ex parte Brister*, 801 S.W.2d 833, 834–35 (Tex. 1990) (holding decree's possession provisions unenforceable by contempt because they gave father unilateral power to modify detailed possession schedule by merely providing mother notice of his changing work schedule); *In re Marriage of Collier*, 419 S.W.3d 390, 398–99 (Tex. App.—Amarillo 2011, pet. denied) (concluding that custody

order providing for father's visitation "at the discretion of" mother was unenforceable by contempt); *J.S.P.*, 278 S.W.3d at 423 (concluding that custody order that did not attach any specific timelines to named therapist's duty to develop and implement transitory program leading to conservator's unsupervised visitation was not specific enough to be enforceable by contempt); *Hale v. Hale*, No. 04–05–00314–CV, 2006 WL 166518, at *3, 6 (Tex. App.—San Antonio Jan. 25, 2006, pet. denied) (mem. op.) (reversing non-specific order that prevented father from seeing daughter "until a therapist recommends visitation").

The trial court has clearly spelled out the rights and duties of the parents regarding the letters; asking the trial court to create more specificity here may be asking the impossible, considering the uncertainty of how the children will fare in the future with their therapist. Indeed, given Irwin's conviction for a violent felony resulting in his incarceration for life without parole and our determination that the trial court acted within its discretion in denying Irwin visitation with the children, it is difficult to contemplate how the trial court could further specify the details of Irwin's limited access to the children while ensuring that such access comports with the children's best interest. *See* Tex. Fam. Code § 153.193 (providing that limitations upon parent's right to possession of or access to child may not exceed those required to protect child's best interest). Because the decree's access provisions clearly outline what is required of Irwin and Stacey and do not provide Stacey discretion over whether Irwin may exercise his authorized access to the children, we conclude that the decree is sufficiently enforceable by contempt and, accordingly, overrule Irwin's fourth issue.

## CONCLUSION

We overrule Irwin's issues and affirm the divorce decree.

                                           _____

                                                 Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Kelly

Affirmed on Motion for Rehearing

Filed:   December 29, 2020