

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
| IN THE INTEREST OF L.D.F., | § | No. 08-12-00347-CV |
| A CHILD. | § | Appeal from the |
| | § | 383rd Judicial District |
| | § | of El Paso County, Texas |
| | § | (TC# 2011CM5118) |
| | § | |

## **O P I N I O N**

J.C. ("Father"), the biological father of L.D.F., appeals the trial court's order in which Father and L.D.F.'s maternal grandmother, M.F. ("Maternal Grandmother") were appointed joint managing conservators of L.D.F., and J.F. ("Mother") was appointed possessory conservator. In four issues, Father maintains that the trial court erred by finding that Maternal Grandmother had standing to intervene in the SAPCR[1] filed by Father, alternatively contending that the trial court's judgment failed to conform to intervenor Maternal Grandmother's pleadings. We affirm.

## **BACKGROUND**

Father contends that he is the biological father of L.D.F. Father and Mother met in 2010, while both were under psychiatric care at University Behavioral Health of El Paso ("UBH"), a

---

[1] SAPCR is the recognized acronym for "suit affecting a parent-child relationship."

private mental health hospital. Father has been diagnosed with bipolar disorder, and prior to the filing of this suit, had been admitted to psychiatric hospitals for treatment, voluntarily and involuntarily, five times in five years. Father was involved in a car accident in which he blacked out and lost thirty minutes of memory leading to his most recent psychiatric hospitalization in March 2011. The following month, April 2011, L.D.F. was born. After L.D.F.'s birth, his Maternal Grandmother took possession of him, purportedly at the behest of Mother, who continued to be hospitalized for unknown reasons.

In July 2011, three months after L.D.F.'s birth, Father filed suit against Mother to establish paternity and sought sole managing conservatorship of L.D.F., asserting Mother could be served at the El Paso Psychiatric Center. The following month, prior to the temporary orders hearing, Mother filed a general denial and Maternal Grandmother filed a petition in intervention for conservatorship seeking sole managing conservatorship. In August 2011, the trial court held an abbreviated temporary orders hearing in which Mother began to testify before the court recessed to speak to the attorneys off the record. The trial court subsequently explained on the record that it had found that Mother was incompetent to stand trial and serve as a witness. The court did not hear any further evidence or enter a ruling on the record prior to signing a temporary order that day appointing Maternal Grandmother, paternal grandmother, paternal grandfather, and Father as L.D.F.'s temporary joint managing conservators and Mother as possessory conservator with no visitation. The temporary order was signed by Father, Maternal Grandmother, paternal grandmother, and paternal grandfather, but not Mother although the order indicates Mother was present for the hearing. The order did not name any party as a primary managing conservator, nor was any party ordered to provide child support or medical insurance, and L.D.F. was to spend every Monday from 4:00 p.m. to Thursday at 4:00 p.m. with his father

2

and the remaining time with Maternal Grandmother. No other possession schedule was ordered.[2]

Father subsequently filed a plea to the jurisdiction, seeking dismissal of intervenor Maternal Grandmother for lack of standing. The trial court denied the plea. During a hearing in January 2012, Father testified that Mother received treatment at the El Paso Psychiatric Center for about three months after L.D.F.'s was born. According to Father, he and Mother are in a relationship. Father told the court that "we were supposed to locate an apartment, move in together, establish and that [sic]. But for some odd reason, they kept her in the hospital for like an extra three months."

According to Father, in September 2011, he needed to go to Fredericksburg, Texas, to take care of an outstanding warrant for possession of less than five grams of marijuana. Mother's sister lives in Fredericksburg, and Father asked if he could stay with her while he was in town. While staying with Mother's sister, Father was arrested for assaulting her. Father maintained he pleaded guilty because "I had to. I had to come home and take care of my child. What am I going to stay in jail for[?]" Father was in jail for one day.

Father lives with his parents, has a car, and receives disability benefits as the result of his bipolar diagnosis; however, he would like to return to work. Father reported he takes his prescription medication "at [his] leisure" for minor bipolar symptoms, although he is "not really too sure." Father testified that he sees his child from "7:00 Monday morning to 4:00 Thursday evening" and picks up the child from Maternal Grandmother. Father takes care of L.D.F. until his parents "arrive home from work about 4:00 to 5:00 in the afternoon."

At the final hearing in April 2012, Father testified he and Mother were still in a relationship, were still intimate, and were hoping to have more children. Father told the court that he and Mother had lived together at his parent's house for about a month and a half and then

---

[2] Paternal grandparents never filed any pleadings in this case seeking intervention or conservatorship.

"we lived in an apartment for a month." Father also admitted he had hit Mother on her arm, and when asked why, he replied, "[f]or some odd reason I do not know. Right here, she was walking away." Father remembered when Mother exhibited two black eyes, but denied knowing how she received them. According to Father, Mother had been hospitalized at the El Paso Psychiatric Center three times since L.D.F.'s birth. Father was prescribed lithium from a doctor at MHMR, but had terminated his relationship with MHMR, and has not taken any medication since September 2011.

Following the conclusion of the final SAPCR hearing, in which Father discussed his psychiatric history, his criminal record, and his relationship with his son, the trial court issued an order establishing Father as L.D.F.'s father. The SAPCR decree appointed Father and Maternal Grandmother as joint managing conservators and Mother as possessory conservator, with no primary conservator designation. Like the temporary order, no visitation was ordered for Mother while Father's period of possession began every week from Monday at 7:00 a.m. to Thursday at 4:00 p.m., and Maternal Grandmother was granted possession of the remainder of the week. Further, no provision was made for any holiday possession schedule and neither parent was ordered to provide child support or medical insurance. Father appealed.[3]

## DISCUSSION
### *Standing*

In Issues One and Three, Father contends that Maternal Grandmother has no standing to intervene. Father argues his appointment as a joint managing conservator demonstrates the trial court found Father was a fit parent who *would not* significantly impair the child's physical health or emotional development pursuant to TEX.FAM.CODE. ANN. § 102.004(b)(West 2014). Therefore, the trial court erred by allowing Maternal Grandmother to intervene. In Issue Two,

---

[3] L.D.F.'s mother never participated in suit, apart from filing an answer and appearing briefly for testimony at the temporary orders hearing before being adjudged incompetent to testify.

4

Father alternatively claims that the trial court abused its discretion in appointing Maternal Grandmother as a joint managing conservator because she failed to identify specific actions or omissions indicating how Father's sole managing conservatorship would significantly impair L.D.F.'s physical health or emotional development. Lastly, Father complains the trial court erred by appointing Maternal Grandmother a joint managing conservator when she only pled for appointment of sole managing conservator; therefore, the trial court's judgment did not conform to her pleadings. We disagree with Appellant's contentions.

## Standard of Review and Applicable Law

"Standing is implicit in the concept of subject matter jurisdiction." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A party's lack of standing defeats a court's subject matter jurisdiction and renders any proceedings against that party void. *Id.* Standing may arise either from judicially-recognized constitutional grounds or by statute. *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2000). "When standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis." *In re S.M.D.*, 329 S.W.3d 8, 12 (Tex.App.--San Antonio 2010, pet. dism'd).

We review questions of standing *de novo*. *Id.* at 13. The party asserting standing bears the burden of proof on this issue. *Id.* In assessing standing, we look primarily to the pleadings and consider relevant evidence of jurisdictional facts "when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). We construe the pleadings in the petitioner's favor, looking to the language to ascertain the pleader's intent. *In re M.J.G.*, 248 S.W.3d 753, 757 (Tex.App.--Fort Worth 2008, no pet.); *Doncer v. Dickerson*, 81 S.W.3d 349, 353 (Tex.App.--El Paso 2002, no pet.). In family law cases in which a petitioner must go beyond mere pleading allegations and provide "satisfactory

proof" of jurisdictional facts to establish statutory standing, the petitioner meets that burden where those predicate facts are proven by a preponderance of the evidence. *In re S.M.D.*, 329 S.W.3d at 13. "When, as in this case, the trial court does not make separate findings of fact and conclusions of law" on the issue of intervenor standing, "we imply the findings necessary to support the judgment . . . [and] review the entire record to determine if the trial court's implied findings are supported by any evidence." *Id.*

"Generally, an intervenor must show standing to maintain an original suit in order to intervene." *In re M.J.G.*, 248 S.W.3d at 757; *see also* TEX.FAM.CODE ANN. § 102.003(a)(West Supp. 2014)(setting out list of parties with general standing to file a suit affecting the parent-child relationship). However, per statute, a grandparent who would otherwise lack standing to file an original SAPCR petition may obtain leave of court to intervene in a pending SAPCR properly brought by a party with standing, provided the grandparent demonstrates, by a preponderance of the evidence, "that appointment of a parent as a sole managing conservator . . . would significantly impair the child's physical health or emotional development." TEX.FAM.CODE. ANN. § 102.004(b); *see also In re S.M.D.*, 329 S.W.3d at 13. The significant impairment language in Section 102.004(b) mirrors identical language in Section 151.131 establishing the Family Code's parental presumption and custody provision. *Id.* at 15. "In fact, the grandparent must make the same showing to establish standing as a nonparent must make to overcome the presumption that a parent is to be named managing conservator." *Id.* at 15 & n.5.

Inclusion of this language in a set of 2005 amendments to the Family Code, Act of May 27, 2005, 79th Leg., R.S., ch. 484, § 3, 2005 TEX.GEN.LAWS 1345,[4] represents a legislative response to the United States Supreme Court's decision in *Troxel v. Granville*, in which a

---

[4] Prior to 2005, grandparents did not have to prove any significant impairment of a child's physical health or emotional development as a prerequisite to intervene in a SAPCR. *See, e.g., Chavez v. Chavez*, 148 S.W.3d 449, 455-56 (Tex.App.--El Paso 2004, no pet.)(describing the standard for grandparent intervention as "relaxed").

6

plurality of the court struck down an overbroad Washington grandparent visitation statute that failed to accord deference to a fit parent's constitutionally protected child-rearing decisions. 530 U.S. 57, 68-9, 120 S.Ct. 2054, 2061-62, 147 L.Ed.2d 49 (2000); *see In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007)(citing *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006))(noting that identical health and emotional well-being language in Section 153.433 grandparent visitation statute designed to protect fundamental parental rights "so long as a parent adequately cares for his or her children (i.e., is fit). . . "); *In re K.D.H.*, 426 S.W.3d 879, 895-96 (Tex.App.--Houston [14th Dist.] 2014, no pet.)(Jamison, J., dissenting)(noting that inclusion of health and emotional well-being language in Section 102.004(a)(1) -- the provision granting standing to file original SAPCR suits -- served to ensure the State complied with *Troxel* where parents are fit). Thus, "[t]he jurisdictional requirement of standing helps ensure that a parent's constitutional rights are not needlessly interfered with through litigation." *In re Russell*, 321 S.W.3d 846, 857 (Tex.App.--Fort Worth 2010, orig. proceeding)(suggesting that the 2005 standing amendments represent legislative attempt to narrowly tailor infringement on parental liberty interest in child-rearing).

**Analysis**

As a threshold matter, we quickly dispatch the argument Appellant advances in Issues One and Three for resting on two flawed legal premises. First, we refute Appellant's contention that under the plain language of the Family Code, appointment of a parent in a limited conservatorship capacity somehow automatically precludes appointment of a grandparent as joint managing conservator by operation of law. The language in the Family Code is clear: if sole managing conservatorship by one parent or joint managing conservatorship by both parents would result in significant impairment of a child's physical health or emotional development, the

7

court has wide discretion to appoint conservators in the child's best interest. TEX.FAM.CODE ANN. § 153.131(a)(West 2014). While we agree with Appellant that Section 102.004(b),[5] a standing statute, does not grant the trial court power to appoint a parent and grandparent as joint managing conservators, Section 153.372 specifically authorizes a nonparent to serve as a joint managing conservator with a parent. TEX.FAM.CODE ANN. § 153.372(a); *see also*, *e.g.*, *In re J.S.P.*, 278 S.W.3d 414, 417, 419 (Tex.App.--San Antonio 2008, no pet.)(where father had limited cognitive abilities, limitation of father's possessory rights by appointing him and grandmother as joint managing conservators was a reasonable exercise of trial court's discretion). Thus, when the statutory provisions are read as a whole, it becomes clear that once a non-parent surpasses the high bar set for intervenor standing under Section 102.004(b), the trial court may allow the grandparent "to intervene and seek both managing and possessory conservatorship." *In re S.M.D.*, 329 S.W.3d at 14; *see also In re Hidalgo*, 938 S.W.2d 492, 496 (Tex.App.--Texarkana 1996, no writ).

Second, Appellant's argument that his appointment as a joint managing conservator under these facts constituted an implicit fitness finding defeating intervenor jurisdiction is fallacious. Where a trial court appoints a parent and nonparent as joint managing conservators, it implicitly rules that parent's sole custody would significantly impair the child's physical health or emotional development. *See Maudlin v. Clements*, 428 S.W.3d 247, 264 (Tex.App.--Houston [1st Dist.] 2014, no pet.). Here, because the trial court permitted grandparent intervention and joint custody in this case, we must assume it impliedly found that Appellant's sole managing conservatorship *would* significantly impair L.D.F.'s physical health or emotional development. *Id*. As such, Maternal Grandmother's standing ultimately turns on the question Appellant presented in Issue Two: did the trial court abuse its discretion in making the implied adverse

---

[5] Section references are to the Family Code unless otherwise specified.

welfare finding that served as a condition precedent for both intervenor standing and a modification of the custody arrangement?[6] We find that it did not.

In assessing Maternal Grandmother's standing, we interpret the "significant impairment" language in Section 102.004 in light of our previous interpretations of identical language in Section 153.131, the Family Code's parental presumption and custody provision. *In re S.M.D.*, 329 S.W.3d at 15. To establish standing, Maternal Grandmother was required to show by a preponderance of the evidence that "some specific, identifiable behavior or conduct of the parent will probably cause" the requisite level of harm under the statute. *In re De La Pena*, 999 S.W.2d 521, 528 (Tex.App.--El Paso 1999, no pet.). "[P]hysical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior on the part of the parent" are all factors the trial court may consider in assessing significant impairment. *Id.* While past misconduct alone "may not be sufficient to show present unfitness," we recognize "an adult's future conduct may be somewhat determined by recent past conduct." *Id.* "Because safety, security, and stability are critical to child development, the danger of uprooting a child may in some instances rise to a level that significantly impairs the child's emotional development." *Chavez*, 148 S.W.3d at 458-59.

Here, there is more than enough evidence for Maternal Grandmother to meet her standing burden and show that Appellant's sole managing conservatorship would probably result in significant impairment of L.D.F's physical health or emotional development. Maternal Grandmother testified that L.D.F. had become attached to her during the first three months of infancy, and that L.D.F. would become upset when separated from her. We recognize early childhood development as a factor the trial court may consider in its harm assessment. *Id.*

---

[6] Appellant did not argue in his brief that the joint managing conservatorship was not in the best interest of the child. As such, we limit our analysis to the narrow question of standing.

9

Furthermore, prior to suit, Appellant had been diagnosed with bipolar disorder,[7] and was hospitalized for mental health reasons five times in five years. The Court is sensitive to the issues surrounding mental health in the family law context, and we recognize that a parent's mental illness diagnosis alone does not necessarily demonstrate that a child's physical health or emotional development will be significantly impaired by parental custody. *See*, *e.g.*, *In re Allen*, 359 S.W.3d 284, 291 (Tex.App.--Texarkana 2012, no pet.)(mother's diagnosis of bipolar disorder alone is insufficient to justify significant impairment of child finding). However, we also recognize that "the trial court is in the best position to observe the witnesses and 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record[,]" and therefore defer to its assessments, particularly in mental health cases, where those findings are not an abuse of discretion. *In re J.S.P.*, 278 S.W.3d at 418-19 [Internal quotation marks omitted].

Additional evidentiary factors make Appellant's diagnosis and psychiatric history relevant. Appellant's first psychiatric hospital stay more than a year before L.D.F.'s birth stemmed from Appellant's use of methamphetamine, an illegal substance. His second hospital stay—a year before L.D.F. was born, at which time Appellant met L.D.F.'s mother—was an involuntary two-week commitment stemming from his assault of his older brother. Seven months prior to the final hearing in this case, while suit in this action was pending, Appellant traveled to Fredericksburg to take care of an old warrant for marijuana possession. While in Fredericksburg, Appellant was arrested for assaulting L.D.F.'s maternal aunt, with whom he was staying.[8] Furthermore, Appellant characterized his bipolar disorder as being mild, and

---

[7] Appellant testified that he had initially been diagnosed as having both schizophrenia and bipolar disorder, but that doctors later diagnosed him as only having bipolar disorder.

[8] We note that Appellant's admission that he once may have hit L.D.F.'s mother could have ostensibly precluded the

10

maintained that his prior bad conduct stemmed from his illness, which is now under control. However, he also testified at the final hearing that he was no longer under the care of any mental health professionals after voluntarily terminating treatment, saying that he took lithium pills "at [his] leisure" to control mood swings.

Taking all those factors together in the aggregate and viewing them in the proper chronological context, we are unconvinced by Appellant's argument that the taint of past bad conduct is too attenuated to justify the trial court's implicit adverse welfare finding. Although Appellant testified that he independently washed, fed, and cared for L.D.F., Appellant had a history of past drug use and various criminal cases against him, including one for which pled guilty for an assault charge shortly before the final paternity hearing. The trial court did not abuse its discretion in finding sufficient jurisdictional facts conferring standing on Maternal Grandmother. Her intervenor status in this suit was proper.

Issues One, Two, and Three are overruled.

### *Pleadings*

---

trial court from appointing him as a joint managing conservator at all. *See* TEX.FAM.CODE ANN. § 153.004(a)(in appointing party as sole or joint managing conservator, trial court shall consider "intentional use of abusive physical force, or evidence of sexual abuse, by a party directed against the party's spouse, a parent of the child, or any person younger than 18 years of age . . . "); TEX.FAM.CODE ANN. § 153.004(b)(court may not appoint party as joint managing conservator if "credible evidence is presented of a history or pattern of . . . physical or sexual abuse by one parent directed against the other parent . . . " and rebuttable presumption against fitness is created); *In re L.C.L.*, 396 S.W.3d 712, 717 (Tex.App.--Dallas 2013, no pet.)("A single act of violence or abuse can constitute a 'history' of physical abuse for purposes of section 153.004 . . . ."). Since the trial court appointed Appellant as a joint managing conservator, we assume that it must not have found his testimony on that issue to be credible, and since neither party raises this issue or challenges this implied finding, we end our analysis there.

As for the assaults against his brother and L.D.F.'s maternal aunt, they also could ostensibly constitute family violence under TEX.FAM.CODE ANN. § 71.004(1)(West 2014), evidence which the court must consider in assessing the scope of possession by a parent appointed as a possessory conservator. TEX.FAM.CODE ANN. 153.004(c). Although Appellant was appointed joint managing conservator and not possessory conservator, the trial court is barred from giving a parent "access to a child" where a preponderance of the evidence shows a history of family violence *unless* (1) the court finds such an arrangement would not "endanger the child's physical health or emotional welfare and would be in the best interest of the child," and (2) the order contains certain precaution measures to mitigate the risk of future violence. TEX.FAM.CODE ANN. 153.004(d), (d-1). Because the parties also failed to raise this issue, we do not address it, and take the arrests only as evidence of repeated run-ins with law enforcement and not for the veracity of the alleged underlying conduct.

11

In Issue Four, Appellant argues that the trial court erred by granting Maternal Grandmother joint managing custody when she asked only for sole managing custody in her pleadings. Maternal Grandmother responds that the variance between the relief granted and the relief she requested is immaterial. We agree.

A trial judgment "shall conform to the pleadings . . ." in a given case. TEX.R.CIV.P. 301. "In child custody cases, where the best interests of the child are the paramount concern, technical pleading rules are of reduced significance." *Messier v. Messier*, 389 S.W.3d 904, 907 (Tex.App.--Houston [14th Dist.] 2012, no pet.). "Pleadings must at a minimum notify the opposing party of the claim involved." *Id.* Here, Maternal Grandmother's pleadings properly placed Appellant on notice that she intended to seek custody of L.D.F. because Appellant's sole managing conservatorship would result in significant impairment to L.D.F.'s physical and emotional welfare. The pleadings also properly established that Maternal Grandmother had intervenor standing, and as we stated previously, the trial court had wide discretion to structure the custody arrangement in L.D.F.'s best interest once her intervenor status was established. Appellant's pleading complaint is without merit.

Issue Four is overruled. We affirm the trial court's judgment.


September 19, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. (Not Participating)