

# NUMBER 13-22-00062-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF D.D.L., A CHILD

**On appeal from the 117th District Court
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Silva**

Appellant Candice[1] appeals the trial court's order granting appellee Meredith's amended petition for possession of and access to Danielle. Candice is Danielle's mother and Meredith is Danielle's paternal grandmother. By two issues, Candice argues that (1) the trial court abused its discretion by failing to dismiss Meredith's suit for lack of

---

[1] On our own motion, we refer to the parties and child by aliases. *See* TEX. FAM. CODE ANN. § 109.002(d).

standing; and (2) if Meredith did have standing, there is insufficient evidence to support the trial court's order.[2] We reverse and render.

## I. BACKGROUND

On July 28, 2021, Meredith filed an original petition seeking to be appointed as a possessory conservator of Danielle, asserting that denial of such "would significantly impair the child's physical health or emotional development." Meredith further averred that she "was recently granted access [to Danielle] and . . . that continued and regular access is in the child's best interest." Meredith's petition noted that the trial court entered a final order appointing Candice as Danielle's sole managing conservator in February 2019. On October 28, 2021, Meredith filed an amended petition, seeking only possession of and access to Danielle. Meredith again alleged that such failure to grant her possession and access would significantly impair Danielle's physical health or emotional well-being "as further detailed in [her] [a]ffidavit." In relevant part, Meredith's affidavit stated:

> The denial of possession of or access to the child by [Meredith] would significantly impair the child's physical health or emotional well-being.
>
> 1. I am the parent of the father of the child the subject of this suit[;]
>
> 2. My son, the father[,] has been incarcerated for more than three months prior to the filing of this [p]etition[;]
>
> 3. The mother's rights have not been terminated[;]
>
> 4. My grandchild lived in my home when [Edward, Danielle's father,] had temporary primary care of e due [sic] mother's instability[;]
>
> 5. I had a very close relationship with my granddaughter before my son was incarcerated and her mother was unstable. I provided a safety net for her. Her father was incarcerated due to a report by me made to protect the child. I was recently allowed a visit with [Danielle] and she was so

---

[2] Meredith did not file a brief to assist us in this appeal.

2

happy[,] even relieved[,] that I was visiting. Any reservations that the mother may have due to acts of the father are overcome by the my [sic] actions against my son to protect my grandchild.[3]

Meredith's amended petition did not allege which provision of the Texas Family Code granted her standing to seek possession of and access to Danielle. *See, e.g.*, TEX. FAM. CODE ANN. §§ 102.003 (general standing), 153.432 (permitting a grandparent to file an original petition or modification seeking only possession and access).

On October 28, 2021, the trial court held a trial on Meredith's amended petition via remote videoconferencing. Candice did not file an answer or appear at trial. The record contains no evidence indicating whether Candice was provided notice of the trial. While testifying, Meredith answered affirmatively when asked: "[H]as your granddaughter lived with you for at least six months even prior to filing this action?" Meredith further testified that she and Danielle "were so connected" and "spent so much time together." Meredith elaborated that "[Danielle] was with [her] every single weekend, and sometimes throughout the week." According to Meredith, "things beg[a]n to change significantly" after Candice was granted "primary care" over Danielle. Meredith explained that Candice moved and changed her phone number, "[s]o [Meredith] lost touch with them."

About six months prior to the hearing, Candice allowed a visit between Meredith and Danielle. Meredith testified that they were happy to see each other and "[Danielle] started crying when she jumped into [her] arms." Meredith stated she was sure that not allowing visits between her and Danielle would significantly impair Danielle's emotional

---

[3] The clerk's record contains a judgment of conviction that shows Edward was convicted of indecency with a child by exposure, a third-degree felony, and was sentenced to four years' confinement. *See* TEX. PENAL CODE ANN. § 21.11(a)(2), (d).

3

well-being "because [Danielle] was asking for [Meredith's] parents, . . . and her cousins, and everyone."

The trial court granted Meredith's requests and directed Meredith's counsel to "[include] the appropriate findings with regards to [Meredith's] standing" in the order. The trial court's order found that Meredith "ha[d] standing pursuant to [§] 102.[]003 of the Texas Family Code" because "[she] is the biological grandmother of the child of this suit and . . . exercised care, control[,] and possession of [Danielle] in her home for at least six months prior to the filing of [her petition]." The order granted Meredith possession of Danielle on the first, third, and fifth weekend of each month, beginning at 9:00 a.m. on Saturday and ending at 6:00 p.m. on Sunday. This restricted appeal followed. *See* TEX. R. APP. P. 30 (permitting a party to file a restricted appeal within six months of an order if they did not participate in the hearing and did not timely file other postjudgment motions or notice of appeal).

## II.   RESTRICTED APPEAL

"Review by restricted appeal affords an appellant the same scope of review as an ordinary appeal." *Ex parte E.H.*, 602 S.W.3d 486, 495 (Tex. 2020). However, before we may sustain a restricted appeal, the appellant must show that

(1)   [s]he filed notice of the restricted appeal within six months after the judgment was signed;

(2)   [s]he was a party to the underlying lawsuit;

(3)   [s]he did not participate in the hearing that resulted in the judgment complained of, and did not timely file any post[]judgment motions or requests for findings of fact and conclusions of law; and

(4)   error is apparent on the face of the record.

4

*Id.* (citing *Pike-Grant v. Grant*, 447 S.W.3d 884, 886 (Tex. 2014) (per curiam)). "For these purposes, the 'face of the record' consists of all the papers that were before the trial court at the time it rendered judgment." *Ex parte Vega*, 510 S.W.3d 544, 547 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). An inference that there is error is not sufficient to support a finding that error is apparent on the face of the record. *Id.* (citing *Ginn v. Forrester*, 282 S.W.3d 430, 431 (Tex. 2009) (per curiam)). "With this limitation, our scope of review is otherwise the same as in an ordinary appeal." *Id.* (citing *Tex. Dep't of Pub. Safety v. Foster*, 398 S.W.3d 887, 890 (Tex. App.—Dallas 2013, no pet.)).

The record is clear that Candice meets the first three requirements of a restricted appeal. *See* TEX. R. APP. P. 30. Accordingly, we must review the record to determine whether "error is apparent" while applying the appropriate standard of review. *Ex parte E.H.*, 602 S.W.3d at 495; *Ex parte Vega*, 510 S.W.3d at 547.

### III.  STANDARD OF REVIEW

Standing, a component of subject-matter jurisdiction, is a threshold issue in a custody proceeding, which cannot be waived and may be raised at any time. *In re K.D.H.*, 426 S.W.3d 879, 882 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). "Whether a person has standing is a question of law" that we review de novo. *In re K.D.H.*, 426 S.W.3d at 882; *In re Shifflet*, 462 S.W.3d 528, 536 (Tex. App.—Houston [1stDist.] 2015, orig. proceeding). However, when standing is challenged on a factual basis, we review the record to determine whether the petitioner has provided satisfactory proof of the requisite facts to create standing. *See In re K.D.H.*, 426 S.W.3d at 886–87; *see also In re M.P.*,

5

No. 13-21-00013-CV, 2022 WL 1572267, at *3 (Tex. App.—Corpus Christi–Edinburg May 19, 2022, no pet.) (mem. op.). "In our de novo review of standing, we must take as true all evidence favorable to the challenged party and indulge every reasonable inference and resolve any doubts in the challenged party's favor." *In re Shifflet*, 462 S.W.3d at 536; (quoting *In re McDaniel*, 408 S.W.3d 389, 397 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding)).

"The burden of proof on the issue of standing is on the party asserting standing." *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd). "In evaluating standing, we construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). When standing by a grandparent is challenged, we do not look to whether the grandparent's case has merit—that is whether they will prevail in their suit—but instead consider whether the grandparent may bring the suit to begin with. *Id.* "When standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis." *In re S.M.D.*, 329 S.W.3d at 12. Thus, a grandparent must present satisfactory proof—a preponderance of the evidence—of the prerequisites identified by the statute. *Id.* at 13 ("In a family law case, when the petitioner is statutorily required to establish standing with 'satisfactory proof,' the evidentiary standard is a preponderance of the evidence."). "If the petitioner fails to meet [their] burden, the trial court must dismiss the suit." *Id.*

## IV.    APPLICABLE LAW

The relevant standing provisions at issue before us are §§ 102.003, 153.432, and

153.433 of the Texas Family Code. TEX. FAM. CODE ANN. §§ 102.003, 153.432, 153.433. Candice challenges Meredith's standing under each section; thus, we will review each provision in turn.

## A. Section 102.003

Section 102.003 provides general standing to any person who falls into one of its fourteen categories. *Id.* § 102.003(a)(1)–(14). As relevant here, Subsection (a)(9) provides standing for "a person, other than a foster parent, who has had actual care control, and possession of the child for at least six months ending not more than [ninety] days preceding the date of the filing of the petition." *Id.* § 102.003(a)(9). "In computing the time necessary for standing under Subsection[] (a)(9) . . ., the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." *Id.* § 102.003(b). Subsection (a)(9) does not include nonparents who do not share a principal residence with the child, regardless of how extensively they participate in caring for the child. *In re H.S.*, 550 S.W.3d at 156. The care, control, and custody exercised under Subsection (a)(9) does not need to be to the exclusion of the parents. *Id.* at 160.

## B. Sections 153.432 and 153.433

Section 153.432 allows a grandparent to file an original suit or modification "request[ing] possession of or access to a grandchild" "without regard to whether the appointment of a managing conservator is an issue in the suit." *Id.* § 153.432(a), (b). However,

the person filing the suit must execute and attach an affidavit on knowledge or belief that contains, along with supporting facts, the allegation that denial

7

of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being. The court shall deny the relief sought and dismiss the suit unless the court determines that the facts stated in the affidavit, if true, would be sufficient to support the relief authorized under [§] 153.433.

*Id.* § 153.432(c); *see* TEX. GOV'T CODE ANN § 311.016(2) ("'Shall' imposes a duty.").

Pursuant to §§ 153.432 and 153.433, a grandparent seeking possession or access to a grandchild must execute an affidavit that states:

(1)    at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;

(2)    the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and

(3)    the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:

(A)    has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;

(B)    has been found by a court to be incompetent;

(C)    is dead; or

(D)    does not have actual or court-ordered possession of or access to the child.

TEX. FAM. CODE ANN. § 153.433(a).

## C.    Fit-Parent Presumption and Significant Impairment

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality op.); *see* U.S. CONST. amend. XIV. A nonparent seeking conservatorship,

8

possession, or access to a child must allege and prove that a parent is unfit before that person has standing to seek such relief. *Troxel*, 530 U.S. at 68–69; *In re Scheller*, 325 S.W.3d 640, 643 (Tex. 2010) (per curiam). A fit parent is entitled to a presumption that they act in the best interest of their child. *Troxel*, 530 U.S. at 68; *In re C.J.C.*, 603 S.W.3d 804, 808 (Tex. 2020). The Texas Supreme Court has clarified that the fit-parent presumption does apply in modification suits, as well. *In re C.J.C.*, 603 S.W.3d at 808.

The Texas Supreme Court has described a nonparent's statutory burden of overcoming the fit parent presumption as "hefty." *In re Scheller*, 325 S.W.3d at 643 (referring to TEX. FAM. CODE ANN. §§ 153.432,153.433). To overcome the fit-parent presumption and establish standing, a nonparent must present evidence of "specific, identifiable behavior or conduct" that will probably result in significant impairment to the child's physical health or emotional well-being. *Rolle v. Hardy*, 527 S.W.3d 405, 420 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *In re L.D.F.*, 445 S.W.3d 823, 830 (Tex. App.—El Paso 2014, no pet.)). Such identifiable behavior or conduct may include "[p]hysical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior on the part of the parent." *Id.*

"A nonparent cannot meet [her] burden by evidence showing that [s]he would be a better custodian of the child[], that [s]he has a strong and on-going relationship with the child[], or that the parent would not have been a proper custodian in the past." *Id.*; *see Troxel*, 530 U.S. 72–73 ("[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child[-]rearing decisions simply because a state judge believes a 'better' decision could be made."); *but see In re L.D.F.*, 445 S.W.3d

9

at 830 ("While past misconduct alone 'may not be sufficient to show present unfitness,' we recognize 'an adult's future conduct may be somewhat determined by recent past conduct.'") (quoting *In re De La Pena*, 999 S.W.2d 521, 528 (Tex. App.—El Paso 1999, no pet.)). "'[L]ingering sadness' from lack of contact with [a] grandparent[] [does] not sufficiently demonstrate significant harm to [a] child[] . . . ." *In re Scheller*, 325 S.W.3d at 643. Nor do frequent visits between grandparents and grandchildren, a grandparent's attendance at many of the children's school activities or other events, or the children saying they miss the grandparents and want visitation. *In re J.M.G.*, 553 S.W.3d 137, 143 (Tex. App.—El Paso 2018, orig. proceeding); *see In re H.L.*, 613 S.W.3d 722, 726–27 (Tex. App.—Fort Worth, 2020, no pet.) (concluding that mother's years old history with Child Protective Services, grandparents' significant past involvement, and children's desire to see grandparents were insufficient to establish significant harm); *In re Kelly*, 399 S.W.3d 282, 284 (Tex. App.—San Antonio 2012, orig. proceeding) (concluding grandparents' testimony that they had a close relationship with their grandchild was insufficient to meet their burden to establish standing).

## V. ANALYSIS

### A. General Standing

As a subissue to her first issue, Candice argues the trial court erred by finding that Meredith possessed standing to seek possession of and access to Danielle under § 102.003 because "[Meredith] exercised care, control[,] and possession of the child in her home for at least six months prior to the filing of this action." *See* TEX. FAM. CODE ANN. § 102.003(a)(9). Thus, we address standing under § 102.003 first.

10

Although the trial court did not specify which subsection under § 102.003 Meredith had standing, only two possible subsections require the child reside with the petitioner for at least six months: subsections (a)(9) and (a)(11). *See id.* § 102.003(a)(9), (11). However, subsection (a)(11) also requires that "the child's guardian, managing conservator, or parent [be] deceased at the time of the filing of the petition." *Id.* § 102.003(a)(11). Neither Meredith's pleadings nor the evidence she presented at the hearing suggest that Danielle's guardian, managing conservator, or parent is deceased. *See id.* Rather, both the pleadings and evidence demonstrate that both Danielle's parents are alive, and no other person has been appointed as a guardian or conservator of Danielle. *See id.* Thus, we conclude the trial court could not have found that Meredith had standing under § 102.003(a)(11). *See In re K.D.H.*, 426 S.W.3d at 886–87.

In assessing Meredith's standing under § 102.003(a)(9), we note that the trial court did not find that Meredith's care, control, and possession of Danielle in her home ended within ninety days from the date she filed of her petition, a requirement under § 102.003(a)(9). *See id.* Further, neither Meredith's pleadings nor testimony included such information. Rather, Meredith's amended petition forecloses the possibility. According to Meredith, after Candice was granted managing conservatorship in February 2019, Meredith lost touch with Candice and Danielle but was permitted a visit about six months prior to trial.[4] Without evidence that Danielle resided with Meredith within ninety days of the filing of her petition, the trial court could not have found that Meredith had

---

[4] Six months prior to the trial would have been approximately April 28, 2021, or ninety-one days prior to the filing of Meredith's original petition.

standing under § 102.003(a)(9). *See id.*; *In re K.D.H.*, 426 S.W.3d at 886–87; *In re S.M.D.*, 329 S.W.3d at 13. It is apparent from the face of the record that the trial court's finding of Meredith's standing under § 102.003 was error. *See Ex parte E.H.*, 602 S.W.3d at 495; *Ex parte Vega*, 510 S.W.3d at 547. We sustain Candice's issue challenging the trial court's finding under Texas Family Code § 102.003. *See* TEX. FAM. CODE ANN. § 102.003.

## B.    Grandparent's Standing

By a second subissue, Candice argues the trial court should have dismissed Meredith's suit under § 153.432(c). *See id.* § 153.432(c). Although the trial court did not find that Meredith had standing under §§ 153.432, 153.433, when reviewing standing we must construe her pleadings in her favor and consider the entire record. *See In re H.S.*, 550 S.W.3d at 155. Meredith's amended petition sought only possession of and access to Danielle—not conservatorship— and alleged Danielle's physical health or emotional well-being would be significantly impaired absent visitation. *See* TEX. FAM. CODE ANN. §§ 153.432, 153.433. Additionally, her amended petition further alleged that Candice's rights had not been terminated and that Danielle's father had been incarcerated during the three-month period preceding the filing of the petition. *See id.* §§ 153.432, 153.433. Each of these facts are required for Meredith to have standing to seek possession of or access to Danielle under § 153.432. *See id.* §§ 153.432, 153.433(a). As such, we construe Meredith's amended petition as asserting standing under §§ 153.432 and 153.433 and review it accordingly. *See In re H.S.*, 550 S.W.3d at 155.

However, beyond summarily stating that a lack of visitation between Meredith and Danielle would significantly impair Danielle's physical health or emotional well-being,

Meredith did not include any supporting facts in her affidavit. *See* Tex. Fam. Code Ann. § 153.432(c); *Rolle*, 527 S.W.3d at 420. Meredith failed to identify any specific behavior or conduct by Candice that would demonstrate that Candice is an unfit parent. *See Rolle*, 527 S.W.3d at 420. The only facts in Meredith's affidavit that could be construed to support a conclusion that Candice was unfit was Meredith's statement that she "had a very close relationship with [Danielle] before [Edward] was incarcerated and [Candice] was unstable." But evidence that a parent may have been unfit in the past is not sufficient to meet the grandparent's burden. *See id.* Further, evidence that Danielle was happy to see Meredith or would miss her if she were not permitted to visit is not sufficient to establish significant impairment and overcome the fit-parent presumption. *See id.*; *see also In re H.L.*, 613 S.W.3d at 726–27; *In re J.M.G.*, 553 S.W.3d at 143; *In re Kelly*, 399 S.W.3d at 284.

Meredith's affidavit did not include any supporting facts that demonstrate denial of possession and access would significantly impair Danielle's physical health or emotional well-being, thus the trial court was required to deny Meredith's requested relief and dismiss the suit. *See* Tex. Fam. Code Ann. § 153.432(c),153.433(a). Thus, error is apparent from the face of the record. *See Ex parte E.H.*, 602 S.W.3d at 495; *Ex parte Vega*, 510 S.W.3d at 547. We sustain the remainder of Candice's first issue.

As a third subissue, Candice also complains that Meredith's affidavit was defective because it included Meredith and the notary's typed names, rather than signatures, *see* Tex. Gov't Code Ann. § 312.011(1), did not include the notary's seal, *see id.* § 406.013(a), and bears no indication that the affidavit was completed using the online

13

notarization process, *see id.* §§ 406.109(d), 406.110(d). However, because we conclude the affidavit failed to conform to the requirements set forth under §§ 153.432 and 153.433 of the Texas Family Code, we do not address this subissue. *See* Tᴇх. R. Aᴘᴘ. P. 47.1. Similarly, we need not reach Candice's second issue arguing that the evidence was factually insufficient to support the trial court's order. *See id.*

## VI.   Cᴏɴᴄʟᴜsɪᴏɴ

We reverse the trial court's judgment and render an order denying Meredith the relief she requested and dismissing her suit without prejudice.[5]

CLARISSA SILVA
Justice

Delivered and filed on the
25th day of August, 2022.

---

[5] This memorandum opinion should not be construed as preventing Meredith from filing suit in the future.

14