

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00175-CV

———————————————————

IN THE ESTATE OF JULIA ANN SMITH, DECEASED

On Appeal from County Court at Law
Cooke County, Texas
Trial Court No. PR17799

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

This appeal concerns the estate of Julia Ann Smith. Shortly before her death, Smith executed (1) a deed conveying her home and acreage (the Property) to Appellees Gregory Hammons and Melynda Hammons—her grandson and granddaughter-in-law—in exchange for a $300,000 promissory note and (2) a will naming Appellants Marlon Avantyr, Amber Schuler, and Shari Gerszewski[1]—her adult children—as the only beneficiaries of her estate. After Smith's death, the will was admitted to probate, and Avantyr was appointed as independent executor. For nearly three years thereafter, Appellants seemingly treated Smith's sale of the Property to the Hammonses as legitimate and accepted payments on the purchase-money note. But after learning that the Hammonses were getting divorced and would be selling the Property, Appellants sued them in probate court[2] to cancel their deed to the Property on the ground that Smith lacked mental capacity when she executed it. Ultimately, the probate court signed an order granting the Hammonses' pleas to the jurisdiction and dismissing Appellants' suit with prejudice. Appellants appeal from this order. We will affirm.

---

[1]Gerszewski is Gregory Hammons's mother.

[2]As discussed in greater detail below, Appellants first filed suit in the Cooke County district court but later filed a motion to dismiss their district court lawsuit and refiled the same suit in the Cooke County Court at Law, which had original probate jurisdiction over Smith's estate. *See* Tex. Gov't Code Ann. § 25.0003(d); *see also* Tex. Est. Code Ann. § 32.001. For ease of discussion, we will refer to the county court at law as the "probate court" herein.

# I. BACKGROUND

Smith was diagnosed with Stage IV lung cancer in September 2019. Although she began a rigorous treatment plan shortly after her diagnosis, her health continued to decline, and she died in March 2020. During the final months of her life, she was primarily cared for by her great granddaughter-in-law, her neighbors, and her friends. Appellants were not in close contact with Smith during this period.

On January 22, 2020, while undergoing cancer treatment, Smith executed a deed conveying the Property to the Hammonses. In exchange, they signed a $300,000 promissory note secured by a deed of trust.

Two days later, Smith executed a will naming Appellants as her sole beneficiaries. After Smith died in March 2020, Avantyr filed an application to probate the will. In support of the probate application, Avantyr submitted answers to written interrogatories in which he stated under oath, among other things, that Smith "was . . . competent when she signed the [w]ill on January 24, 2020." Ultimately, the will was admitted to probate, and Avantyr was appointed independent executor.

In December 2020, Avantyr filed an Inventory, Appraisement, and List of Claims listing all of the assets of Smith's estate. The inventory, which was approved by the probate court, acknowledged Smith's sale of the Property to the Hammonses—it did not list the Property among the estate's real property, but it did include the $300,000 loan to the Hammonses as a "miscellaneous" asset. For nearly three years after the inventory was filed, Appellants accepted payments on the

3

purchase-money loan, but in August 2023, after learning that the Hammonses were getting divorced and would be selling the Property, Appellants filed suit in Cooke County district court seeking to invalidate the Hammonses' deed to the Property on the ground that Smith lacked legal capacity when she executed it. Appellants also filed a notice of lis pendens to prevent the Property from being sold pending the outcome of their lawsuit.

The Hammonses responded by filing an answer that included, among other things, a plea to the jurisdiction and a motion to expunge Appellants' notice of lis pendens. The district court set the Hammonses' pleas to the jurisdiction and motions to expunge Appellants' notice of lis pendens for hearing on January 4, 2024. But two days before the hearing, Appellants filed a motion to dismiss their district court lawsuit on the ground that the probate court was the proper forum in which to adjudicate it, and they released their notice of lis pendens. The district court signed an order dismissing Appellants' suit in February 2024.

One month before Appellants filed their motion to dismiss their district court suit, Avantyr also filed an application in the probate court to resign as independent executor. In the application—which was not served on the Hammonses[3]—Avantyr

---

[3]Indeed, it does not appear that the application was served on any interested parties. The certificate of service reflects that the application was served only on Appellants' counsel and Suzie Wilkinson, who appears to be associated with Appellants' counsel's law firm. Thus, there is some support in the record for Melynda Hammons's contention that the application was filed "secretly."

4

explained that he had been mistaken when he had stated under oath that his mother had been competent when she signed her will in January 2020. Based on his newfound belief that Smith had lacked the capacity to execute her will, Avantyr asked the probate court to (1) accept his resignation as independent executor, (2) set aside the will, and (3) cancel all letters testamentary issued on the basis of the will.

Contemporaneously with his application to resign as independent executor, Avantyr filed an application to determine heirship and a motion to appoint an attorney ad litem to represent any unknown heirs. On December 6, 2023, the probate court signed orders (1) granting all of the relief requested in Avantyr's application to resign as independent executor and (2) appointing an attorney ad litem.

On January 2, 2024—the same day on which Appellants filed their motion to dismiss their district court lawsuit—they filed a nearly identical lawsuit in the probate court and filed a new notice of lis pendens. Once again, the Hammonses each filed an answer that included, among other things, a plea to the jurisdiction and a motion to expunge Appellants' notice of lis pendens. To address the Hammonses' argument that Appellants lacked standing to bring a lawsuit on behalf of Smith's estate, Appellants filed an amended petition in which they asserted—for the first time and contrary to Avantyr's representations to the court—that no administration of Smith's

estate was pending and none was necessary.[4]  Appellants alleged that, as heirs, they had standing under these circumstances.

In February 2024, the probate court held a hearing on the Hammonses' pleas to the jurisdiction.  After considering the parties' briefs as well as the evidence and arguments presented at the hearing, the probate court found that (1) Appellants lacked standing, (2) they were estopped to deny the validity of Smith's will, and (3) their lawsuit was filed after limitations had expired.  Based on these findings, the probate court granted the Hammonses' pleas to the jurisdiction and dismissed Appellants' lawsuit with prejudice.  This appeal followed.[5]

## II. DISCUSSION

On appeal, Appellants challenge the probate court's findings and in three issues argue that: (1) as Smith's heirs, they have standing to bring a suit to recover assets of her estate; (2) the probate court's order approving the inventory did not bar their

_____

[4]In Avantyr's application to determine heirship, he asserted that after he resigned as independent executor, "an administ[rat]ion of the estate remain[ed] necessary" because "the assets of the [e]state require[d] distribution."  And in Appellants' original petition to recover estate assets, they asserted that the probate court was a proper venue because "a probate [was] pending [t]herein."  Other than the filing of Appellees' pleas to the jurisdiction, it is unclear what could have caused Appellants to so abruptly change their position regarding whether an administration was pending or necessary.

[5]After the trial court granted the Hammonses' pleas to the jurisdiction, Appellants released their notice of lis pendens and then filed a new notice of lis pendens after they filed their notice of appeal.  In addition, Appellants sought to revive their previously dismissed lawsuit in the district court by filing a motion to vacate the dismissal order, but the district court denied that motion.

claims against the Hammonses; and (3) their claims are not barred by limitations. Because Appellants' first issue is dispositive of this appeal, we need not—and therefore do not—address their remaining issues. *See* Tex. R. App. P. 47.1.

## A. Pleas to the Jurisdiction: Applicable Law and Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Standing is a component of subject matter jurisdiction. *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015). We review a trial court's ruling on a plea to the jurisdiction de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015). We likewise review questions of standing de novo. *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

The party asserting standing bears the burden of proof on the issue. *Howard v. U.S. Bank Nat'l Ass'n as Tr. of OWS REMIC Tr. 2013-1*, No. 05-19-00315-CV, 2020 WL 3786215, at *3 (Tex. App.—Dallas July 7, 2020, pet. denied) (mem. op.); *In re L.D.F.*, 445 S.W.3d 823, 828 (Tex. App.—El Paso 2014, no pet.). In assessing standing, we look primarily to the pleadings and consider relevant evidence of jurisdictional facts when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *L.D.F.*, 445 S.W.3d at 828. We construe the pleadings in the petitioner's favor, looking to the language to ascertain the pleader's intent. *L.D.F.*, 445 S.W.3d at 828; *In re M.J.G.*, 248 S.W.3d 753, 757 (Tex. App.—Fort Worth 2008, no pet.).

7

## B. Appellants Lack Standing

Generally, only a probate estate's personal representative—the executor or the administrator—has standing to sue to recover property belonging to the estate. *See Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971); *see also* Tex. Est. Code Ann. § 351.054(a) (providing that "[a]n executor or administrator . . . may commence a suit for . . . recovery of personal property, debts, or damages . . . or . . . title to or possession of land"). But this general rule has a number of exceptions, which—if applicable—allow heirs to file suit on the estate's behalf. *See Pratho v. Zapata*, 157 S.W.3d 832, 847–48 (Tex. App.—Fort Worth 2005, no pet.) (Walker, J., concurring) (collecting cases and outlining various exceptions). Here, the parties have identified three potentially applicable exceptions.[6]

First, heirs may bring suit if they plead and prove that there is no estate administration pending and none is necessary. *See Shepherd v. Ledford*, 962 S.W.2d 28, 31–32 (Tex. 1998) (citing *Frazier*, 472 S.W.2d at 752).

Second, heirs may bring suit on the estate's behalf when the personal representative is unable or unwilling to do so or when the personal representative has

---

[6]Misreading our opinion in *Pratho*, Appellants identified a purported fourth exception in their briefing—that heirs have standing to bring an action on the estate's behalf when no debts exist and the heirs agree on the distribution. But *Pratho* did not actually recognize such an exception. Rather, *Pratho* merely analyzed these criteria to determine whether the cross-appellant had satisfied the no-administration-is-necessary prong of the first exception outlined below. *See* 157 S.W.3d at 840–41.

a conflict of interest.[7]  *See Mayhew v. Dealey*, 143 S.W.3d 356, 371 (Tex. App.—Dallas 2004, pet. denied).

Third, heirs may bring suit when the estate's administration is closed.  *See Jordan v. Lyles*, 455 S.W.3d 785, 791 (Tex. App.—Tyler 2015, no pet.) (op. on reh'g).

Here, Appellants pleaded that they had standing under the first and third exceptions.[8]  To establish standing based on either of these exceptions, Appellants

---

[7]Because Avantyr resigned as executor and therefore Smith's estate does not have a personal representative, this exception seemingly does not apply.  However, relying on *Izard v. Townsend*, Appellants espouse a broader formulation of this exception whereby heirs have standing to bring suit on an estate's behalf when "the interest of the estate requires action and there is no representative qualified to act." *See* 208 S.W.2d 666, 668 (Tex. App.—Galveston 1948, no writ).  But Appellants' formulation omits a crucial word.  Under *Izard*, this exception is triggered only when "the interest of the estate requires *immediate* action."  *Id.* (emphasis added).  Although Appellants' first amended petition noted that Avantyr "ha[d] requested to resign[] and ha[d] been removed as [i]ndependent [executor]," it did not allege—or even suggest— that the estate's interest required immediate action.  Thus, Appellants failed to carry their burden to plead facts showing that *Izard*'s version of the exception applied.  *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (noting that plaintiff bears burden to plead facts affirmatively demonstrating trial court's jurisdiction).

[8]In their first amended petition, Appellants alleged that, "Plaintiffs have the standing to bring this action because they are the he[ir]s.  There is no administration . . . necessary.  There is no property to be administered[,] and there are no outstanding debts or obligations owed by the estate."  They also cited *Frazier* for the proposition that "[h]eirs have standing for recovery of assets of an estate when there is no administration pending or none necessary."  Thus, in essence, Appellants alleged that the administration had been informally closed and that, as a result, when they filed suit, no administration was pending or necessary.  *See Alford-Shaw v. Nicholson*, No. 02-20-00387-CV, 2021 WL 2753508, at *5 (Tex. App.—Fort Worth July 1, 2021, pet. denied) (mem. op.) (explaining that an administration may be considered informally closed if "the debts of the estate have been paid and the property distributed such that there was no need for further administration" (quoting

must show that the administration of Smith's estate was no longer pending at the time that they filed suit. But they cannot do so.

Because an independent executor is not required to formally close an independent administration, such administrations are often not formally closed. *See* Tex. Est. Code Ann. § 405.012; *Est. of Stegall*, No. 02-17-00410-CV, 2019 WL 6205244, at *6 (Tex. App.—Fort Worth Nov. 21, 2019, no pet.) (mem. op.); *see generally* Tex. Est. Code Ann. § 402.001 (mandating that after probate court appoints independent executor and after independent executor files inventory affidavit, further action by probate court is prohibited unless otherwise provided in Estates Code); William I. Marschall Jr., Independent Administration of Decedents' Estates, 33 Tex. L. Rev. 95, 116 (1954) ("[I]ndependent executors may close an administration and relinquish the property to the heirs or devisees, without the formality of judicial sanction or with judicial sanction, if they so choose."). "In the absence of a formal closing, an independent administration may be considered closed when the facts and circumstances show that all debts and claims against the estate have been paid, the estate's net assets have been distributed, and there is no need for further administration." *Alford-Shaw*, 2021 WL 2753508, at *5 (first citing *Stegall*, 2019 WL 6205244, at *6; then citing *In re Est. of Teinert*, 251 S.W.3d 66, 67 (Tex. App.—Waco 2008, pet. denied) (per curiam); and then citing 17 M. K. Woodward et al., Tex.

_____

*In re Est. of Rowan*, No. 05-06-00681-CV, 2007 WL 1634054, at *3 (Tex. App.—Dallas June 7, 2007, no pet.) (mem. op.))).

Practice Series: Probate and Decedents' Estates § 513.5 (2020)). Thus, whether an estate was informally closed turns on whether "the debts of the estate [were] paid and the property distributed such that there was no need for further administration." *See id.* (quoting *Est. of Rowan*, 2007 WL 1634054, at *3).

The record reflects that the administration had not been informally closed—and thus remained pending—at the time Appellants filed their lawsuit.[9] Although Avantyr's inventory reflected that "[n]o claims [we]re due and owing to the [e]state," it did not state that the estate's debts had been paid or that the assets had been distributed. Thus, the inventory did not—in and of itself—provide the information necessary to show that the administration had been informally closed. *See Alford-Shaw*, 2021 WL 2753508, at *6 (holding that appellant had failed to show that administration was informally closed because inventory affidavit did not explicitly state that the estate's assets had been distributed). Further, before Appellants filed their lawsuit, Avantyr filed a motion to appoint an attorney ad litem to represent any unknown heirs, and the probate court signed an order appointing an attorney ad litem. Not only did such an appointment suggest that further estate distributions may have been necessary,[10] but it also likely created a future claim against the estate for professional

---

[9]Nothing in the record suggests—nor do Appellants allege—that Avantyr took any steps to formally close the administration prior to resigning as executor.

[10]After Appellants commenced their lawsuit against the Hammonses, the attorney ad litem filed a report detailing his efforts to locate any unknown or missing heirs and recommending that the court enter an order determining that no additional

11

fees. *See Ford v. Roberts*, 478 S.W.2d 129, 133 (Tex. App.—Dallas 1972, writ ref'd n.r.e.) (holding that appellee had carried burden to show that administration was still open because, inter alia, the record showed that the estate's accountant would have a future claim against the estate for his professional fees); *see also* Tex. Est. Code Ann. § 53.104(b) (providing that an attorney ad litem appointed in a probate proceeding "is entitled to reasonable compensation for services provided in the amount set by the court" and that the probate court shall "tax the compensation as costs in the probate proceeding and order the compensation to be paid out of the estate or by any party at any time during the proceeding"). Indeed, as noted, in Avantyr's application for determination of heirship that he filed contemporaneously with his motion for the appointment of an ad litem attorney, he expressly acknowledged that "an administ[rat]ion of the estate remain[ed] necessary" because "the assets of the [e]state require[d] distribution."

Thus, we conclude that the independent administration was not informally closed at the time that Appellants filed their lawsuit and that, therefore, they lack standing. *See Frazier*, 472 S.W.2d at 752. Accordingly, the probate court properly dismissed Appellants' lawsuit for lack of subject matter jurisdiction. *See In re Pub. Int. Legal Found., Inc.*, No. 14-20-00665-CV, 2020 WL 5807408, at *1 (Tex. App.—

---

heirs exist. But regardless of whether any additional heirs were ultimately found, by filing the motion, Avantyr implicitly recognized that at the time the lawsuit was filed additional distributions may have been necessary.

Houston [14th Dist.] Sept. 30, 2020, no pet.) (per curiam) (mem. op.) ("[C]ourts have no subject[]matter jurisdiction over and therefore must dismiss claims made by parties who lack standing to assert them." (citing *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012))).

We overrule Appellants' first issue.

### III. CONCLUSION

Having overruled Appellants' dispositive issue, we affirm the probate court's order.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: November 27, 2024